tion papers were served, and the order appealed from was granted September 1, 1908, permitting an amendment of the first cause of action by alleging a contract of sale by Fairbanks, Morse & Co. to the defendant and an assignment by the company to the plaintiffs. It is not claimed that the plaintiffs now have any different or better information as to the situation than they had at the time of the first and the second trial, and no good reason is alleged why an amendment to the complaint was not then sought. Plaintiffs deliberately took the chances of winning on the pleadings as they were and failed, and now, after two trials, seek to change their position. They deem the amendment necessary, and the result of the trials indicate at least its propriety. The Special Term did not consider the plaintiffs' laches such as to require a denial of the motion, and we are not disposed to interfere with that exercise of discretion. The terms upon which amendments to pleadings are allowed rest to a great extent in the discretion of the court upon the facts of each particular case. Where some reason is not shown moving the discretion of the court otherwise, the rule is well established that, where material and substantial amendments are granted a party after an unsuccessful trial, the other party should be reimbursed for the taxable costs and disbursements made since the pleading to be amended was served. The facts in this case furnish no reason for a departure from the rule.

The order appealed from should therefore be modified by requiring as a condition of the amendment the payment of the costs and disbursements made since the original complaint was served and $10 costs of motion, and, as so amended, such order is affirmed, with costs to the appellant to abide the event. All concur, except CHESTER and SEWELL, JJ., who dissent.

<hr>

RUTHERFORD REALTY CO. v. COOK.

(Supreme Court, Appellate Division, First Department. January 8, 1909.)

MORTGAGES (§ 199*)—FORECLOSURE—RENTS PENDING ACTION—STIPULATION.

Plaintiff in a mortgage foreclosure action, in which it was decided defendant was not liable for the deficiency, was not entitled to have applied on the deficiency the rents accruing during foreclosure, and deposited in a bank under a stipulation that the balance after payment of fixed charges against the property should "be held to abide the event of the action," this being at most an agreement that, if it was finally determined defendant was personally liable for any deficiency, the surplus rents should be applied thereto.

[Ed. Note.—For other cases, see Mortgages, Dec. Dig. § 199.*]

Appeal from Special Term, New York County.

Action by the Rutherford Realty Company against Willet F. Cook. From an order directing payment of funds to plaintiff, defendant appeals. Reversed, and motion denied.

Argued before INGRAHAM, McLAUGHLIN, CLARKE, SCOTT, and HOUGHTON, JJ.

<hr>

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Martin L. Stover, for appellant.
H. H. Snedeker, for respondent.

HOUGHTON, J.  The plaintiff held mortgages upon real property owned by the defendant Cook, and obtained a judgment of foreclosure, adjudging that Cook should pay any deficiency that might arise on the sale.  Cook had interposed various defenses to the foreclosure action, and, on his appeal to the Court of Appeals, that court decided that he was not liable for deficiency, and directed that the judgment be reversed unless the plaintiff stipulated to eliminate that part of its judgment (191 N. Y. 555, 84 N. E. 387), which stipulation was given.  During the progress of the litigation, a motion was made by plaintiff for the appointment of a receiver of the rents.  This motion was adjourned from time to time, and various stipulations were entered into by the parties, to the effect that the rents of the property should be applied to the payment of ground rent, taxes, and insurance.  Instead of an order appointing a receiver being entered, a general stipulation was finally made that the rents from the premises be deposited in the Fourteenth Street National Bank of the city of New York to the joint account of the defendant Cook and the plaintiff's attorney, out of which should be paid taxes, ground rent, and insurance premiums, any remaining sum "to be held to abide the event of this action."  The litigation extended over a period of some years and a sale was not had until August 4, 1908, on which the premises brought some $13,000 less than the amount due.  At the time of the sale there was on deposit $13,000 and over, from which the court has directed there be paid to the plaintiff the amount of the deficiency arising on the sale.

We think the order was erroneously granted.  The defendant Cook was the owner of the premises, and as such owner was entitled to the rents.  He consented, however, while the foreclosure action was pending, and while he was contesting the right of the plaintiff to foreclose and to charge him for any deficiency which might arise on the sale of the premises that the rents might be impounded and the fixed charges against the property paid therefrom, any balance, however, to abide the event of the action.  The "event of the action" so far as he personally was concerned was his liability for the deficiency.  That liability the court of last resort relieved him from.  The language of the various stipulations does not warrant the interpretation that he agreed that any surplus of rents should be paid to the plaintiff in case the property did not bring enough at the sale to pay the amount due on the mortgages.  The utmost that can be said to have been agreed by the stipulations was that, in case it was finally determined that he was personally liable for any deficiency, the surplus rents should be applied in satisfaction of that liability.  He being the owner of the rents, and that event not having ultimately transpired, the money belongs to him, and it was erroneous to direct it to be paid to the plaintiff.

Some unpaid ground rent and some insurance appears to have fallen due before the day of sale.  Whether all or some parts of these amounts should be deducted from the fund on deposit before pay-

ment of it to appellant we do not now decide, as those matters are not before us.

The order should be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs. All concur.

<hr>

(129 App. Div. 572.)

## PLUNKETT v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department. December 30, 1908.)

1. STREET RAILROADS (§ 114*) — COLLISION WITH PEDESTRIAN — NEGLIGENCE — EVIDENCE.

Evidence as to speed of the car, in an action for collision of a street car with a pedestrian at a crossing, held sufficient to show negligence.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 114.*]

2. STREET RAILROADS (§ 117*) — COLLISION WITH PEDESTRIAN — CONTRIBUTORY NEGLIGENCE—EVIDENCE.

Evidence in an action for collision in the nighttime of a street car at a crossing with an old lady held sufficient to go to the jury on the question of her freedom from contributory negligence, though there was a headlight on the car.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 117.*]

Hooker, J., dissenting.

Appeal from Trial Term, Kings County.

Action by Mary E. Plunkett against the Brooklyn Heights Railroad Company. From a judgment for plaintiff, and from an order denying a motion for new trial, defendant appeals. Affirmed.

Argued before WOODWARD, JENKS. HOOKER, GAYNOR, and MILLER, JJ.

D. A. Marsh, for appellant.
Benjamin G. Paskus, for respondent.

GAYNOR, J. The case seems to have been one for the jury. The plaintiff, an aged woman of 65, was crossing Nostrand avenue on Lincoln road, which is a rural district. The car that hit her was going south on Nostrand avenue. She crossed from the east, crossed the first track, and had all but cleared the next one, on which the car was running, when she was hit. She was crossing by the far crossing, so that the car came across Lincoln road before hitting her. There was ample testimony that the car was going at great speed over the crossing. The motorman even says it was going 7 or 8 miles an hour, which was a high speed for a crossing, if not even between blocks, and the jury could well have found that it was going much faster. The only passengers in the car, three, say it ran a block after hitting the plaintiff before it was brought to a standstill, although the motorman at once set about stopping it, and that the trolley pole was turned, and the car ran back to the place where the plaintiff was hit.

Whether the plaintiff was negligent cannot be said as matter of law. She says she looked when at the curb, and again before getting to the track on which she was hit, to see if any car was coming, but saw none. It is said that if she had looked she must have seen the car. and that as she did not see it, it is proved that she did not look, as in