**RIKO ENTERPRISES, INC. d/b/a Philadelphia 76ers, Petitioner,**

v.

**SEATTLE SUPERSONICS CORPORATION, Respondent.**

No. 73 Civ. 1288.

United States District Court,
S. D. New York.

April 12, 1973.

522

Sherman & Citron, New York City (Cecil A. Citron, New York City, of counsel), for petitioner.

Monheimer, Schermer, Van Fredenberg & Smith, Seattle, Wash. (Melville Monheimer, Jr., Stephen P. Ryder, Seattle, Wash., of counsel), and Mudge, Rose, Guthrie, Alexander & Mitchell, New York City (William B. Lawless, Donald J. Zoeller, John B. Sherman, New York City, of counsel), for respondent.

## OPINION

TENNEY, District Judge.

Petitioner Riko Enterprises, Inc. (hereinafter "Philadelphia") has moved this Court for an order confirming an arbitration award pursuant to 9 U.S.C. § 9 (1970). Respondent Seattle Supersonics Corporation (hereinafter "Seattle") has cross-moved to dismiss petitioner's application. For the reasons set out below, petitioner's application is dismissed and respondent's motion to vacate is granted.

## FACTS

Philadelphia and Seattle are member teams of the National Basketball Association (hereinafter "NBA") and signatories to its constitution. As members of the NBA they are eligible to participate in its annual college draft by which each team is allowed to select, on a rotating basis, those college players with whom they desire to negotiate contracts of employment. Under the NBA constitution, once a player is selected by a team as a draft choice, that team, and only that team, has the right to negotiate for his services.

In 1969, John Brisker became eligible for the NBA college draft. No NBA member team, however, selected him as one of its choices at the draft meetings. In July 1969, Philadelphia asked that Brisker be placed on its supplemental draft list. Brisker, however, signed a contract to play for the Pittsburgh team of the rival American Basketball Association. In the spring of 1972, the Pittsburgh team became insolvent and Brisker was again free to negotiate with NBA teams. Brisker's attorney contacted the Seattle team and indicated his desire to play in the NBA.

At this point, petitioner and respondent disagree with respect to the action taken by Seattle. Petitioner claims that Seattle continued to negotiate with Brisker even after being informed by NBA Commissioner Kennedy that Philadelphia possessed sole negotiating rights. Seattle, on the other hand, claims that it directed Brisker's attorney to negotiate with Philadelphia and continued to do so until Kennedy informed Brisker's attorney, by letter on June 19, 1972, that Brisker was a "free agent". On August 7, 1972, Brisker signed a contract to play for Seattle. On August 14, 1972, Philadelphia filed formal charges with the Commissioner against Seattle, claiming that Seattle had wilfully violated the NBA's constitution and by-laws by negotiating with Brisker while he was still on Philadelphia's draft list. On August 15, 1972, Commissioner Kennedy approved Brisker's contract with Seattle.

The matter was brought before the NBA Board of Governors (hereinafter the "Board") at a meeting held on September 20, 1972. At that meeting the Board voted to table the charges brought by Philadelphia under ¶¶ 13 and 14 of the constitution and refer the matter to the Commissioner under ¶ 24 for disposition. On November 16, 1972, the Commissioner issued his decision finding that Seattle had violated the NBA constitution (i. e., "violated the simple principle of fair play"), fining them $10,000 and awarding Seattle's first round draft pick in the 1973 college draft to Philadelphia.[1] On March 28, 1973, Philadelphia filed the instant petition for an order confirming the Commissioner's award. Seattle, by order to show cause returnable April 11, 1973, moved to vacate the award. The NBA college draft is scheduled to be held on April 16, 1973.

### Respondent's Motion

▐ Before proceeding to a disposition of respondent's motion, it is necessary to consider the procedural issues raised by petitioner. The first objection to respondent's motion is that it is time barred by 9 U.S.C. § 12 (1970), which, in pertinent part, provides:

"Notice of motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered."

Since more than three months have elapsed between November 16, 1972, when the Commissioner rendered his decision, and April 11, 1973, the return date of respondent's motion, petitioner argues that the motion is time barred. Were this an independent motion to vacate, this Court would agree that respondent has run afoul of § 12. Petitioner has, however, by filing the instant application, provided respondent with the

very means by which it can still raise the objections otherwise barred by § 12.

"Upon a motion to confirm the party opposing confirmation may apparently object upon any ground which constitutes a sufficient cause under the statute to vacate . . . although no such formal motion has been made."

\*    \*    \*    \*    \*    \*

"Although more than three months have elapsed since the award was filed, the appellant may still assert objections to confirmation of the award. There is authority for the proposition that even after the statutory period for moving to vacate an award has expired, a party may use the statutory grounds for vacation in defense of a motion to confirm." The Hartbridge, 57 F.2d 672, 673 (2d Cir. 1932), cert. denied, Munson Steamship Line v. North England Steamship Co., 288 U.S. 601, 53 S.Ct. 320, 77 L.Ed. 977 (1933).

See also, Brown v. Bridgeport Rolling Mills Co., 245 F.Supp. 41 (D.Conn.1965). Furthermore, even though New York decisions are persuasive in interpreting the federal arbitration statute, The Hartbridge, supra, 57 F.2d 672, the cases cited by petitioner are inapposite. The rule in New York is the same as that in the Second Circuit. See, e. g., Grayson-Robinson Stores, Inc. v. Iris Construction Corp., 7 A.D.2d 367, 183 N.Y.S.2d 695, appeal denied, 8 A.D.2d 698, 185 N.Y.S.2d 746 (1959), affirmed, 8 N.Y.2d 133, 202 N.Y.S.2d 203, 168 N.E.2d 377 (1960).

▐ Petitioner further objects on the grounds that respondent is barred by the doctrine of laches since it waited until only a few days before the 1973 college draft to challenge the award. The Court disagrees. Documents and affidavits submitted by the respondent indicate that it attempted to obtain a recon-

---

1. Pg. 3. The Court has not considered in this setting whether the rules or established customs of the NBA allegedly violated by Seattle were anti-competitive.

See, Robertson v. National Basketball Association, 70 Civ. 1526 (S.D.N.Y. March 12, 1973) (consent order entered May 4, 1970).

sideration of the Commissioner's decision both from the Commissioner and the Board subsequent to November 16, 1972. (Volchok Aff. in Supp. of Motion, Exhibits 9, 10, 11, 12, 13 and 14.) Furthermore, the Court must once again remind petitioner that its filing of the application renewed respondent's right to assert the grounds for vacating the award contained in 9 U.S.C. § 10 (1970).

Turning now to respondent's motion, three grounds are asserted in opposition to confirmation of the award: (1) that the Commissioner exceeded the authority granted to him by the NBA constitution in ordering the forfeiture of Seattle's draft pick (9 U.S.C. § 10(d)); (2) that the Commissioner was guilty of misconduct in refusing to hear evidence pertinent and material to the controversy (9 U.S.C. § 10(c)); (3) that petitioner lacks standing to seek enforcement of the fine. Since the Court finds that the award should be vacated under the first two objections, there is no need to discuss the question of standing.

■ The NBA constitution is a contract between the member teams of the NBA. Consequently, the terms of that contract define the jurisdiction of any arbitration pursuant to it. Philadelphia brought its charges against Seattle under ¶¶ 13 and 14 of the constitution asking that its membership be terminated. Paragraph 13 provides in pertinent part:

> "13. The membership of a member . . . shall be suspended or terminated . . . by a vote of two-thirds of the Board of Governors if the member . . . shall do or suffer the following: .
>
> (a) Willfully violate any of the provisions of the Constitution or By-Laws of the Association."

Philadelphia's action was brought pursuant to ¶ 13(a). Paragraph 14, in great detail, describes the procedures to be followed in determining charges brought under ¶ 13. That procedure includes the filing of formal charges with the Commissioner, the filing of a formal answer to the charges, the convening of a special meeting of the Board to hear the charges, the right to appear by counsel and submit evidence, and a vote of the Board on the question of the charges. A two-thirds vote is required to sustain the charges. A *second* two-thirds vote is required to suspend or terminate membership. Paragraph 15 allows the Board, *in its discretion,* to levy a fine or to order forfeiture of a draft choice in lieu of termination or suspension.

The instant case followed the prescribed procedure up to the point of presenting the charges to the Board. At that point, all of the members of the Board, including petitioner's and respondent's representatives, voted to table the ¶¶ 13 and 14 charges and to refer the matter to the Commissioner under ¶ 24. Paragraph 24, in pertinent part, provides:

> "(k) All actions duly taken by the Commissioner pursuant to this paragraph 24 or pursuant to any other Section of the Constitution, *which is not specifically referable to the Board of Governors,* shall be final, binding and conclusive, as an award in arbitration, and enforceable in a court of competent jurisdiction in accordance with the laws of the State of New York." (Emphasis added.)

It is this provision which petitioner asserts as the basis for its application for an order confirming the award.[2] The

2. Pg. 8. The Court has serious doubts whether ¶ 24(k) and the NBA constitution constitute "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . ." 9 U.S.C. § 2 (1970). The provisions of ¶ 24(k) read more like an agreement that the actions of the Commissioner shall be considered as having *been* by arbitration rather than an agreement *to* arbitrate the issues. It should be *noted* that ¶ 14 contains clear and specific provisions for arbitration to fix

Court, however, finds that in ordering the forfeiture of Seattle's draft rights under ¶ 24(k), the Commissioner exceeded his powers as an arbitrator under the constitution.

Paragraph 24(k) clearly excludes actions which are referable specifically to the Board. There can be no question that charges brought pursuant to ¶ 13(a) are to be determined *only* by the Board and then only in accordance with the procedures outlined in ¶ 14. It is obvious that the remedies of termination of membership or forfeiture of draft rights were considered so drastic that a two-thirds vote of the Board was required to employ them. Petitioner, however, argues that ¶ 24(j) overrides the limitations of ¶ 24(k).

"(j) The Commissioner shall, wherever there is a rule for which no penalty is specifically fixed for violation thereof, have the authority to fix such penalty as in his judgment shall be in the best interests of the Association. Where a situation arises which is not covered in the Constitution and By-Laws he shall have the authority to make such decision as in his judgment shall be in the best interests of the Association. No monetary penalty fixed under this provision shall exceed $25,000."

█ The Court must, once again, disagree. Paragraph 24(j) applies only when there is no specific penalty fixed for a violation of a rule or where a situation arises which is not covered by the constitution. Neither operative fact exists here. Instead, there is both a specific penalty (¶¶ 13, 15) and a specific rule violation (¶ 13(a)) in the NBA constitution which governs this case. If the Court were to rule, as petitioner urges, that the Commissioner's powers under ¶ 24(j) are unlimited, then it would be necessary to conclude that the penalties and procedures contained in ¶¶ 13, 14 and 15 are superfluous. It is the Court's finding, however, that while ¶

24(j) gives the Commissioner great discretion in resolving disputes between member teams, he may not usurp those powers reserved to the Board in ¶¶ 13, 14 and 15.

Moreover, it must be remembered that the Board voted to *table* the ¶¶ 13 and 14 charges and refer the situation to the Commissioner under ¶ 24. There is nothing in the minutes of that meeting to suggest that the Board or the parties contemplated giving the Commissioner powers which were the exclusive province of the Board. Indeed, the mere fact that the dispute was referred under ¶ 24 indicates that the penalties of ¶¶ 13 and 15 were not within their contemplation.

There remains the question of the validity of the $10,000 fine. It is the opinion of the Court that since the action was commenced under ¶ 13(a) even the penalty of a fine in lieu of termination of membership was within the sole discretion of the Board. Paragraph 15 reads, in pertinent part:

### "FINE AS ALTERNATIVE TO EXPULSION

15. If a charge that a member or person has committed any of the offenses described in paragraph 13 is sustained, *two-thirds of all the Governors may in lieu of compelling the divestiture of the owner or suspending or terminating the membership of such member or person, direct that the divestiture of the ownership of such a member or person be suspended or terminated only if the member or person fails to pay a stated fine* in a stipulated manner and by a stipulated date, which fine may be required to be paid, in whole or in part, to any other member or members as compensation to such member or members for damages sustained by it or them by reason of such act or acts of omission or commission by such offending member or person. . . . *Moreover, the*

---

the price for the stock or interest of any person whose stock or interest has been

divested under that paragraph. No such provisions appear in ¶ 24.

*Board of Governors, may in its discretion, either in addition to, or in lieu of such fine, direct the forfeiture of the offending member's draft rights."* (Emphasis added.)

It is evident from a reading of ¶¶ 14 and 15 that in order to impose a fine for a charge of violating ¶ 13(a) a two-thirds vote of the Board is required, both to sustain the charges and then to impose the fine.

It may be argued, however, that the parties, at least in respect to the imposition of a fine, consented to the jurisdiction of the Commissioner when they, too, voted to refer the matter to the Commissioner under ¶ 24. It is at this point that the Court will turn to respondent's second claim that the arbitration was procedurally defective.

■ Paragraph 24(k) provides that the action of the Commissioner shall be enforceable as an award in arbitration under the laws of New York. New York CPLR § 7506(b) provides that "[t]he arbitrator *shall* appoint a time and place for the hearing. . . ." (Emphasis added.) Section 7506(c) provides that "[t]he parties are *entitled* to be heard, to present evidence and to cross-examine witnesses." (Emphasis added.) The papers and testimony before this Court show that Commissioner Kennedy conducted no hearing and did not allow Seattle to submit any evidence to rebut the charges. Moreover, the NBA constitution makes no provision for a hearing or other due process in actions taken by the Commissioner under ¶ 24. No court, state or federal, should affix its imprimatur to any such "award". *Cf.,* Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). This is a clear violation of New York law and, standing alone, is reason enough to vacate the award of both the forfeiture of the draft right and the levying of the fine under 9 U.S.C. § 10(c) (1970). American Airlines, Inc. v. Louisville & Jefferson County Air Board, 269 F.2d 811, 817 (6th Cir. 1959).

■ Finally, Seattle has moved to preliminarily enjoin Philadelphia from exercising Seattle's first round draft choice in the NBA college draft scheduled to be held on April 16, 1973. However, the NBA is not a party to the present proceeding. A temporary injunction against Philadelphia would not, absent NBA approval, restore Seattle's first round draft choice but would merely invite confusion. The requested relief must accordingly be denied.

The "award" of the Commissioner dated November 16, 1972, is hereby vacated.

So ordered.