CHAUFFEURS, TEAMSTERS, WARE-HOUSEMEN AND HELPERS LOCAL UNION NO. 364, Plaintiff,

v.

RUAN TRANSPORT CORPORATION, Defendant.

No. S 78–216.

United States District Court, N. D. Indiana, South Bend Division.

July 16, 1979.

John E. Doran, South Bend, Ind., Edward J. Fillenwarth, Jr., Frederick W. Dennerline III, Indianapolis, Ind., for plaintiff.

David R. Melton, Lawrence C. DiNardo, South Bend, Ind., Jerald R. Cureton, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

The Chauffeurs, Teamsters, Warehousemen and Helpers Local Union No. 364 represents certain employees of Ruan Transport Corporation. The union has brought this action against Ruan Transport to secure compliance with the grievance awards of two contractually established grievance bodies. These grievance bodies are arbitrators whose awards are subject to confirmation, vacation, modification, or correction under Title 9 of the United States Code. The grievance awards which the union is seeking to have confirmed were made after grievances were filed with the arbitrators by members of the union pursuant to the collective bargaining agreement between the union and Ruan Transport. The grievances alleged the defendant's violation of that collective bargaining agreement. Both bodies ruled for the union and against Ruan Transport. As an affirmative defense to this action to confirm the awards the defendant claims that the arbitrators were biased and that the arbitration proceedings were unfair and irregular. More than three months elapsed between the filing of the grievance award and the filing of the affirmative defense.

The plaintiff now moves to strike this defense on the grounds that it is barred by 9 U.S.C. § 12, which provides, "Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered . . ." For the reasons set out below, the motion to strike will be denied.

There are at least two district court cases which have ruled that the three month limitation period provided in 9 U.S.C. § 12 does not apply to the defense of a motion to

confirm an arbitration award. Both cases rely for authority on a single Court of Appeals case. The district court cases hold that while 9 U.S.C. § 12 limits to three months the time during which an aggrieved party may attack an arbitration award by means of a motion to vacate, 9 U.S.C. § 12 does not limit the time during which an aggrieved party can defend a motion to confirm. The union has argued that these cases are incorrectly reasoned. Because the union's argument has some appeal, this Court has deemed it advisable to discuss the issue in some detail.

The cases in question are *Paul Allison, Inc. v. Minikin Storage of Omaha, Inc.,* 452 F.Supp. 573 (D.Neb.1978), and *Riko Enterprises, Inc. v. Seattle Supersonics Corporation,* 357 F.Supp. 521 (S.D.N.Y.1973). In the most recent case, *Paul Allison, Inc.,* the court considered itself bound by, and relied exclusively on, *Riko Enterprises, Inc.,* and *The Hartbridge,* 57 F.2d 672 (2d Cir. 1932), in holding that the three month limitation did not apply to the defense of a motion to confirm an arbitration award. And in *Riko Enterprises, Inc.,* the court relied exclusively on *The Hartbridge.* Thus, both *Paul Allison, Inc.,* and *Riko Enterprises, Inc.,* relied exclusively on *The Hartbridge* in ruling that the three month limitation did not apply to the defense of a motion to confirm.

The union argues that this reliance on *The Hartbridge* was misplaced. The Second Circuit remanded *The Hartbridge* and ordered the trial court to allow the motion to confirm to be defended even though more than three months had elapsed between the filing of the arbitrator's award and the filing of any defense to the motion to confirm. But the court expressly refused to rule on the three month limitation issue which this court now faces. While noting that some state courts had ruled that the expiration of the time period for moving to vacate did not preclude the defense of a motion to confirm, the Second Circuit declined to follow these state court rulings.

"Although more than three months have elapsed since the award was filed, the appellant may still assert objections to confirmation of the award. There is authority for the proposition that even after the statutory period for moving to vacate an award has expired, a party may use the statutory grounds for vacation in defense of a motion to confirm. But *without committing ourselves to the correctness of this construction of the statute,* it will suffice to say that we think the period of the appeal may be excluded from the three month period prescribed by section 12."

57 F.2d at 673–74 (emphasis added; citations deleted). By ruling that the three month limitation period did not run while the arbitrator's decision was on appeal, the court avoided the three month limitation question which this Court now faces. The language of *The Hartbridge* which has apparently been misinterpreted in *Paul Allison, Inc.,* and *Riko Enterprises, Inc.,* is concerned with an entirely different issue: whether a district court is required to grant confirmation of an arbitration award summarily when the filing of a motion for an order confirming the award precedes the filing of a motion for an order vacating the award. The confusing language is as follows:

"We do not, however, agree with the district judge's statement that confirmation must be granted 'as a matter of course, unless the award has been vacated or at least unless a motion to vacate or modify has been noticed.' Upon a motion to confirm the party opposing confirmation may apparently object upon any ground which constitutes a sufficient cause under the statute to vacate, modify, or correct, although no such formal motion has been made."

57 F.2d at 673. The court was there concerned with the grounds on which a motion to confirm could be defended. The ruling was that the grounds were the same as those on which a party could base a motion to vacate, modify, or correct an award. The court was not concerned with whether a motion for an order confirming an award could be defended on these grounds after the three month period had elapsed. That issue the court expressly avoided. Thus,

*Paul Allison, Inc.,* and *Riko Enterprises, Inc.,* rely for authority on a case which does not stand for the proposition for which it is cited. Similar erroneous interpretations of *The Hartbridge* have been made by other courts in dicta. See *Moran v. Paine, Webber, Jackson & Curtis,* 279 F.Supp. 573 (W.D.Pa.1967), *Cocotos Steamship of Panama, S. A. v. Hugo Neu Corporation,* 178 F.Supp. 491 (S.D.N.Y.1959).

But whatever problems there may be with the reliance by these cases on *The Hartbridge,* an inquiry into the legislative history of the statute in question will reveal that the ultimate rulings were correct.

Title 9 of the United States Code is positive law. It was enacted as such by the Arbitration Act of July 30, 1947, ch. 392, § 1, 61 Stat. 672. The underlying statute was the Arbitration Act of February 12, 1925, ch. 213, 43 Stat. 885. The 1947 act was not intended to modify any of the provisions of the 1925 act. "No attempt is made in this bill to make amendments in existing law. That is left to amendatory acts to be introduced after the approval of this bill." House Report No. 255, April 14, 1947, reprinted at [1947] U.S.Code Congressional Service, p. 1515. Therefore, in determining how the legislature intended 9 U.S.C. § 12 to be applied, we may look to the underlying 1925 statute. Because specific language of the 1925 statute will be helpful in this discussion, it will be quoted. The pertinent language reads as follows:

"Sec. 9. If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in the next two sections.

.   .   .

"Sec. 10. That in either of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any part to the arbitration—

"(a) Where the award was procured by corruption, fraud, or undue means.

"(b) Where there was evident partiality or corruption in the arbitrators, or either of them.

"(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

"(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

"(e) Where an award is vacated and the time within which the agreement required the award to be made· has not expired the court may, in its discretion, direct a rehearing by the arbitrators.

"Sec. 11. That in either of the following cases the United States court in and for the district wherein the award was made may make an order modifying or correcting the award upon the application of any party to the arbitration—

"(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.

"(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matters submitted.

"(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

"The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties.

"Sec. 12. That notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered."

■ The primary source of legislative intent is, of course, the language of the statute in question. The language of this legislation, however, is ambiguous as to the narrow issue which is of concern in this case, and which requires an interpretation of the last part of the first sentence of section 9: ". . . thereupon the court must grant such an order unless the award is vacated, modified, or corrected as provided in the next two sections." The question is whether the legislature intended the time limitation provided in section 12 to apply to section 9, whether the legislature meant that ". . . thereupon the court must grant such an order unless the award is vacated, modified, or corrected as provided in sections 10, 11, and 12" or ". . . thereupon the court must grant such an order unless the award is vacated, modified, or corrected as provided in sections 10 and 11 without regard to section 12." If anything, the reference to "the next two sections" indicates that the time limitation of section 12, the third following section, was not intended to apply to the defense of a motion to confirm.

■ But the language is too ambiguous to be determinative. A further investigation of the legislative history of the act is merited; which leads to a discussion of the proceedings of the United States Congress in adopting the legislation. Those proceedings, however, are silent on the issue in question in this case. There is nothing to indicate how Congress intended the clause in question to be read. The only point made clear in the debates on this legislation is that it was enacted to create a remedy not available at common law. Specifically, the purpose of this legislation was to make it possible to specifically enforce a contractual agreement to arbitrate disputes. Before this legislation, under the common law, such a contractual agreement had no practical effect. Not being specifically enforceable, a contractual agreement to arbitrate disputes could be ignored. The discussions on the floor of the House of Representatives and on the floor of the Senate reveal only that Congress was generally concerned with the creation of this remedy. See, 65 Cong.Rec. 1931 (1924) (remarks of Mr. Graham), 66 Cong.Rec. 984 (1924) (remarks of Mr. Walsh). Whether they intended the defense of a motion to confirm to be subject to the time limitation of section 12 was not discussed.

■ The record of the proceedings in Congress being silent, the source of the legislation in question is important; in this case it is decisive. The United States legislation was modeled, in part, almost verbatim after New York legislation which was already in force. While the New York legislation differs from the legislation ultimately enacted by the United States Congress, the clause, ". . . thereupon the court must grant such an order unless the award is vacated, modified, or corrected as provided in the next two sections" appeared in the New York act. Some 16 years before the United States Congress enacted its Arbitration Act, a New York court interpreting the identically worded New York statute faced the issue this court now faces. In re ·Picker, 130 App.Div. 77, 114 N.Y.S. 289 (1909). And in that case, the New York court held that the three month limitation did not apply to the defense of a motion to confirm. The defendant was allowed to defend a motion to confirm without regard to the three month limitation.

> "The more regular course undoubtedly to be taken by a party wishing to vacate, modify, or correct an award is to make an independent motion for that relief; but we are of the opinion, and so the authorities hold, that the omission to make that motion will not deprive the party of his right to raise the objections upon the motion to confirm the report, and to review the judgment upon the same ground."

114 N.Y.S. at 292. Congress having failed to disapprove of this interpretation of the New York law, either in the language of the legislation or in the congressional debate, it seems that congress intended to adopt the New York law as it had been interpreted by the New York court. It must be concluded that it was the intent of

Congress to adopt the same rule in effect in New York with regard to the issue this Court now faces. The United States Congress having adopted language which had already been given an interpretation it must be presumed that it was their intent to adopt the interpretation. That presumption not being rebutted by the language of the legislation or the comments of the legislators, this Court must conclude that congress intended that the language of section 9 be interpreted as the identically worded New York legislation had been interpreted. Congress intended that section 12 not prevent a motion to confirm from being defended on sections 10 and 11 grounds even after the three month limitation period had expired. The only action section 12 prohibits is the filing of an independent motion for an order vacating, modifying, or correcting an award. Section 12 only limits the time during which the party against whom an arbitrator rules can initiate court action; section 12 does not limit the time during which the defenses enumerated in sections 10 and 11 are available.

It follows that the defendant has raised a possibly valid defense. The defense will not be stricken. The plaintiff's motion to strike the affirmative defense is DENIED.