**KENDRICK MEMORIAL HOSPITAL, INC., Plaintiff-Appellant,**

v.

**Charles A. TOTTEN, Jr., Defendant-Appellee,**

**and**

**John Stapp and Arthur Miller d/b/a Stapp and Miller Construction Company, and Pioneer National Title Insurance Co., Defendants.**

**No. 1–180A12.**

Court of Appeals of Indiana, First District.

July 23, 1980.

prosecution to reopen its case. *See, Bullock v. State,* (1978) Ind.App., 382 N.E.2d 179.

Jack Rogers, Rogers, Tompkins & Gesse, Franklin, John T. Hume, III, and Michael E. Simmons, Smith & Jones, Indianapolis, for plaintiff-appellant.

Alan H. Lobley, Ice, Miller, Donadio & Ryan, Indianapolis, Young, Gholston & Young, Franklin, for defendant-appellee.

RATLIFF, Judge.

## STATEMENT OF THE CASE

Plaintiff-appellant Kendrick Memorial Hospital, Inc. (Kendrick) appeals from the granting of a Motion for Summary Judgment in favor of defendant-appellee Charles A. Totten, Jr. (Totten). The record reflects that all other defendants in this cause have filed separate Motions for Summary Judgment, but rulings on these motions have been stayed pending appeal.

## FACTS

The granting of a motion for summary judgment is appropriate only where there is no genuine issue of material fact presented by the case and where the moving party is entitled to judgment as a matter of law. Ind. Rules of Procedure, Trial Rule 56(C). To determine whether a genuine issue exists the court will take as true all facts alleged by the non-moving party and will resolve all doubts against the moving party. *Krueger v. Bailey*, (1980) Ind.App., 406 N.E.2d 665. The facts, therefore, will be viewed in the light most favorable to the non-moving party, appellant Kendrick.

Appellant Kendrick entered into a contract with appellee Totten, an architect, on August 25, 1970, for the design and construction of a forty room proctological hospital. The contract contained the following provisions:

"11.1 All claims, disputes and other matters in question arising out of, or relating to, this Agreement or the breach thereof shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining. This Agreement so to arbitrate shall be specifically enforceable under the prevailing arbitration law.

"11.2 Notice of the demand for arbitration shall be filed in writing with the other party to this Agreement and with the American Arbitration Association. The demand shall be made within a reasonable time after the claim, dispute or other matter in question has arisen. In no event shall the demand for arbitration be made after institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations.

"11.3 The award rendered by the arbitrators shall be final, and judgment may be entered upon it in any court having jurisdiction thereof."

Totten agreed to provide design and construction supervision services, and upon

Totten's recommendations Kendrick entered into contracts with the other defendants.

Construction of the hospital was begun on May 20, 1971, but was not completed within the twelve month period required by the contract. Other problems arose during construction involving additional expenses and financing, changes in plans, and the quality of workmanship. On January 16, 1974, Totten executed the following document:

"To: Kendrick Memorial Hospital, Inc.

"To Whom It May Concern:

"I have requested that the check of $5,107.79 being held in escrow by the organization of Kendrick Memorial Hospital, Inc. since the date of 10–10–73, be delivered to me.

"In accepting this check which identifies the completion of payment in full for the services rendered in concern of the supervision of the construction of a 40 bed hospital as per contract dated August 25, 1971, I am accepting this said check with the following provisions:

"1. I recognize that the Hospital has many complaints of unfinished jobs by Best Electric Co. (now defunct, but serviced by holders of a completion bond serviced by Aetna Casualty Insurance Co. [sic]

"2. I recognize that the John Nading Plumbing Co. has several unfinished items in the 40 bed facility and must be completed as quickly as possible.

"3. I recognize that the contractors—John Stabb and Arthur Miller have obligations for completion of unfinished items within this 40 bed facility.

"I am aware that the Board of Directors of the hospital (Kendrick Memorial Hospital, Inc.) and the Administrator of this Hospital are at this time, quite concerned with the completion of the project and find this situation to be a distressing factor. In accepting the check of $5,107.79 as payment in full for my services rendered, I actually have not completed my service to this not-for-profit corporation and I hereby obligate myself to see that the new construction is completed to the satisfaction of the Hospital Directors, and the Hospital Administrator. If this matter is not completed within 60 days, I am aware that the Hospital Corporation has the aim of bringing the matter of completion to the Courts of Indiana and I shall become a portion of those so named because of failure to complete contracts as signed August 25, 1971.

/s/ Charles A. Totten,
Jr., A.I.A.

"Attest to Signature:
s/s Inez Sims"

On September 29, 1976, Kendrick filed a civil action against Totten and the other above-named defendants for compensatory damages alleging overcharges, repairs of poor workmanship, lost revenues, and increased financing costs and also for punitive damages alleging wilful and wanton acts of fraud and misrepresentation. All defendants answered alleging the arbitration provision in the contract at issue as an affirmative defense. For approximately two and one-half years thereafter all defendants participated in discovery procedures and preparation for trial. Prior to the first trial date set by the court for August 17, 1978, Totten moved to continue the trial date because his local counsel would be out of town. On May 11, 1979, Totten filed his Motion for Summary Judgment which was granted by the trial court on June 6, 1979, and plaintiff-appellant Kendrick's complaint against Totten was ordered dismissed without prejudice. The court's Order on Motion for Summary Judgment is stated as follows:

"ORDER ON MOTION FOR
SUMMARY JUDGMENT

"This came before the Court on the motion of the defendant Charles A. Totten, Jr. for judgment pursuant to Rule 56 on his affirmative defense raising the arbitration clause in the written contract between plaintiff and the defendant Totten. The Court having read the briefs

and considered the argument of counsel on June 1, 1979 now sustains such motion for the following reasons:

"1. There is no genuine issue of material fact with respect to whether or not the written contract between plaintiff and the defendant Totten contains the following provisions:

" '11.1 All claims, disputes and other matters in question arising out of, or relating to, this Agreement or the breach thereof shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining. This Agreement so to arbitrate shall be specifically enforceable under the prevailing arbitration law.

" '11.2 Notice of the demand for arbitration shall be filed in writing with the other party to this Agreement and with the American Arbitration Association. The demand shall be made within a reasonable time after the claim, dispute or other matter in question has arisen. In no event shall the demand for arbitration be made after institution of legal or equitable proceedings based on such claim, dispute or other matter in question which would be barred by the applicate [sic] statute of limitations.'

"2. There is no genuine issue of material fact with respect to whether or not the defendant Totten in his original answer and in his amended answer raised the foregoing provisions of the contract as an affirmative defense.

"3. There is no question but that under IC 34-4-2 [sic] but that the foregoing provision of the contract is valid and binding on the parties or that the plaintiff's claim against the defendant Totten arises out of or relates to such written contract or the breach thereof.

"4. Defendant Totten did not waive his right to rely upon the foregoing provisions when he executed the document dated January 16, 1974, attached to plaintiff's Response to Defendant Totten's Motion for Summary Judgment the execu-tion of which the defendant Totten admits.

"5. Defendant Totten had no obligation to demand arbitration under the foregoing provisions of the contract since he was not making any claim against the plaintiff.

"6. The defendant Totten raised the issue of arbitration in his answer. Since that time the defendant Totten has taken no action which would indicate that he was not continuing to rely upon such defense or otherwise had waived such defense, and the plaintiff had not shown that there is a genuine issue of material fact as to whether or not there was such a waiver.

"For the foregoing reasons plaintiff's complaint against the defendant Charles A. Totten, Jr. should be dismissed without prejudice to the plaintiff pursuing his claim against such defendant under the arbitration provisions of their contract. The Court expressly determines that there is no just reason for delay in the entry of judgment in favor of the defendant Totten and judgment shall be entered accordingly.

"Entered this 6 day of June, 1979.

/s/ <u>Larry J. McKinney</u>
    JUDGE, Johnson Circuit Court"

## ISSUES

On appeal Kendrick raises three issues for our consideration.

I. Whether the trial court erred when it held that the contract between Kendrick and Totten contained a binding arbitration provision and that Totten had properly raised that provision as an affirmative defense in this action.

II. Whether the trial court erred when it held that Totten had not expressly or impliedly waived his right to arbitration under the contract at issue.

III. Whether the trial court exceeded its authority under IC 1971, 34-4-2-3 (Burns Code Ed.) by granting Totten's Motion for

Summary Judgment under the facts and circumstances of this case. Because of our decision, we discuss only the first issue. We reverse.

## DECISION

Kendrick argues that the arbitration provisions in the contract (set out above) are only *potentially* binding upon the parties and that the parties may waive the provisions either expressly in writing or impliedly by their conduct. Kendrick contends that the parties in this case have waived the provisions: appellant, by filing suit and appellee, both in the document signed on January 16, 1974, and by his conduct. Totten, on the other hand, argues that the arbitration clauses, are binding on both parties, that they are irrevocable and provide an exclusive remedy under Indiana law, that he has not waived the provisions either expressly or impliedly, and that he had no duty to initiate arbitration since he had no claim against Kendrick.

■■■ We need deal only with the binding nature of the provisions under Indiana law. We agree that arbitration provisions, as a matter of law in Indiana, may be made valid and enforceable by the parties to a contract. We believe, however, that Indiana law does not preclude the parties' waiver of such provisions. Waiver, being a question of fact under the circumstances of each case, rather than a question of law, is not an appropriate issue upon which a grant of Summary Judgment may be based.

Although at common law agreements to arbitrate future disputes were unenforceable because public policy considerations were said to disfavor contracts ousting courts of jurisdiction, more recently arbitration agreements have become favored by the law as a speedy, efficient, and economical dispute settlement mechanism relieving congestion in the court system. *Pathman Construction Co. v. Knox County Hospital Association*, (1975) 164 Ind.App. 121, 326 N.E.2d 844; *Miner v. Walden*, (1979) Sup. Ct., 101 Misc.2d 814, 422 N.Y.S.2d 335;

*Schroud v. Van C. Argiris & Co.*, (1979) 78 Ill.App.3d 1092, 34 Ill.Dec. 428, 398 N.E.2d 103; *Beynon v. Garden Grove Medical Group*, (1980) 100 Cal.App.3d 698, 161 Cal. Rptr. 146. Today there exists not only the Federal Arbitration Act, but also the Uniform Arbitration Act adopted in twenty-three jurisdictions [1] whose purpose is "to make uniform the law of those states which enact similar arbitration statutes." IC 34–4–2–21. The need for arbitration legislation arose in response to the common law rule which held such agreements unenforceable, hence of no practical effect. *Chauffeurs, Teamsters, Warehousemen and Helpers Local Union No. 364 v. Ruan Transport Corp.*, (1979) 473 F.Supp. 298. The central purpose of uniform arbitration legislation, therefore, is to make contractual arbitration agreements specifically enforceable. *Id.*

There is no doubt that Indiana courts long adhered to the common law rule abjuring agreements to arbitrate future disputes. *Pathman Construction Co., supra; Utopia Coach Corp. v. Weatherwax*, (1978) Ind. App., 379 N.E.2d 518. In 1969, however, the Indiana legislature enacted its version of the Uniform Arbitration Act, thereby repudiating the common law rule and providing

"(a) A written agreement to submit to arbitration is valid, and enforceable, an existing controversy or a controversy thereafter arising is valid and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. If the parties to such an agreement so stipulate in writing, the agreement may be enforced by designated third persons, who shall in such instances have the same rights as a party under this act [34–4–2–1—34–4–2–22]. This act also applies to arbitration agreement between employers and employees or between their respective representatives (unless otherwise provided in the agreement).

"(b) This act specifically exempts from its coverage all consumer leases, sales,

---

1. 7 U.L.A. *Uniform Arbitration Act* (Master Ed., Supp.1980).

and loan contracts, as these terms are defined in the Uniform Consumer Credit Code. [Acts 1969, ch. 340, § 1, p. 1429.]" IC 34–4–2–1.[2] In addition, Ind. Rules of Procedure, Trial Rule 38(E) acknowledges the capacity of parties to submit disputes to arbitration: "Nothing in these rules shall deny the parties the right by contract or agreement to submit or agree to submit controversies to arbitration made *before or after* commencement of any action thereon or deny the courts power to specifically enforce such agreement." (Our emphasis.) Because arbitration legislation is of relatively recent vintage, the jurisprudence interpreting its provisions is cloudy and unsettled on many issues both in Indiana and other jurisdictions. *See* 5 Am.Jur.2d *Arbitration and Award* (1962); 6 C.J.S. *Arbitration* (1975). The issue of waiver, for example, is especially hazy. *See, e. g.,* 25 A.L. R.3d 1171.

However, this court has already interpreted IC 34–4–2–1 to provide that while written agreements to submit either an existing controversy or a controversy arising thereafter to arbitration are valid and enforceable, "as in the case of other contractual matters, [they] may be waived by the parties . . .." *Shahan v. Brinegar,* (1979) Ind.App., 390 N.E.2d 1036 at 1041. In Indiana we may not say as a matter of law, therefore, that the mere existence of an arbitration clause in a contract means that arbitration automatically becomes a binding or irrevocable condition precedent to litigation. In other words, an arbitration provision in a contract made in Indiana is not the equivalent of a covenant not to sue unless expressly so provided in the contract. *Cf., e. g., Ellis v. Rocky Mountain Empire Sports, Inc.,* (1979) Colo.App., 602 P.2d 895, (pleading an unlimited arbitration clause strikingly similar to the one in the case at bar[3] was held to sustain a Motion for Sum-

mary Judgment). It is pertinent to note also in this context that § 1 of the Uniform Arbitration Act states that "[a] written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is *valid, enforceable,* and *irrevocable,* . . ."[4] whereas IC 34–4–2–1 provides that such agreements are *valid* and *enforceable,* but *not irrevocable. See* IC 34–4–2–1 set out above. Had the Indiana legislature intended that waiver of arbitration provisions be precluded, they could have stated that arbitration clauses are valid, enforceable, *and irrevocable.* (We do not here confront the constitutionality of such legislation.) This is not to say that the parties by contract may not specifically provide that such provisions are irrevocable or that arbitration procedures are a condition precedent to legal action. We say only that, even though arbitration may be made an exclusive remedy under the contract, arbitration is not an exclusive or irrevocable remedy under the statute. Nothing in the statute precludes either party from waiving the arbitration provision. Therefore, because the facts of this case viewed most favorably to Kendrick support an inference of waiver and because the question of waiver presents a genuine issue of fact, the court's granting Totten's Motion for Summary Judgment as a matter of law was inappropriate.

Reversed and remanded for further proceedings on the issue of waiver.

ROBERTSON, P. J., and NEAL, J., concur.

---

2. We believe that a printing error exists in the first sentence of IC 34–4–2–1(a) and that it should read "A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid and enforceable . . .."

3. That clause as set out at 602 P.2d 897 provided: "All matters in dispute between the Player

and the Club shall be referred to the Commissioner and his decision shall be accepted as final, complete, conclusive, binding and unappealable, by the Player and by the Club."

4. Emphasis ours. 7 U.L.A. *Uniform Arbitration Act* § 1 (Master Ed.1978).