**TOKURA CONSTRUCTION CO., LTD.**

v.

**CORPORACION RAYMOND, S. A.**

Civ. A. No. H–81–1649.

United States District Court,
S. D. Texas,
Houston Division.

March 11, 1982.

Hayden Burns, Butler, Binion, Rice, Cook & Knapp, Houston, Tex., for plaintiff.

Knox D. Nunnally, Vinson & Elkins, Houston, Tex., for defendant.

## MEMORANDUM AND ORDER

CIRE, District Judge.

Before the Court is Plaintiff's motion for confirmation of an arbitration award. For the reasons indicated below, the Court hereby GRANTS Plaintiff's motion and ORDERS that Plaintiff is entitled to recover from Defendant the sum of $263,384.18 plus interest at the rate of nine percent per annum from February 4, 1981, the date that the arbitration award was rendered.

### I. Factual Setting

Plaintiff Tokura Construction Co., Ltd. ("Tokura") is a Japanese corporation with its principal place of business in Nagoya, Japan. Defendant Corporacion Raymond, S.A. ("Raymond") is a Delaware corporation with its principal place of business in Houston, Texas. Plaintiff instituted this suit pursuant to the Court's diversity jurisdiction, 28 U.S.C. § 1332(a)(2), and the Federal Arbitration Act, 9 U.S.C. § 9, to confirm an arbitration award entered in Tokura's favor by a panel of the American Arbitration Association.

Raymond entered an agreement with the Port Authority of Guayaquil, Ecuador in which Raymond agreed to act as general contractor to expand the Port. Tokura bid on certain items of work required under the general contract and was subsequently awarded a series of subcontracts by Raymond to, for example, perform some dredging, clearing, grubbing, and filling.

Paragraph XXII of this subcontract provided that if a dispute arose between Raymond and Tokura as to the interpretation or performance of their agreement, either party could demand that the dispute be finally settled by arbitration in Houston, Texas under the Rules of the American Arbitration Association. In this provision, the parties also agreed that judgment on the award could be made by any court with jurisdiction.

After performance of the subcontract began, disputes arose between Raymond and Tokura over payments due to Tokura and Raymond's claims that Tokura had delayed its work completion and had defectively performed its work. The parties agreed to arbitrate their differences and selected a three-member arbitration panel from names provided by the American Arbitration Association.

Tokura and Raymond submitted their respective claims to the arbitrators on May 8, 1979 and June 21, 1979. Evidence was presented in three sessions: June 2, 1980, through June 13, 1980; September 15, 1980, through September 26, 1980; and December 8, 1980, through December 18, 1980. On February 4, 1981, the arbitrators rendered their award in favor of Tokura for the following items:

(1) 78.7% of all amounts received by Raymond from the Port Authority of Guayaquil, Ecuador under pay items 5a, 5b, 6a, and 6b of the contract between Raymond and the Port Authority, with proper escalation;

(2) a total of $625,400 under pay item 176 for demobilization of Tokura's equipment;

(3) the sum of $265,400 under pay item 177;

(4) an additional amount of $165,100 for mobilization of Tokura's second dredge; and

(5) the sum of $449,023 for accrued interest calculated at the rate of nine percent per annum.

The award also assessed 90 percent of the arbitration costs against Raymond and 10 percent against Tokura. Additionally, Raymond was directed to diligently pursue payment from the Port Authority of amounts retained from Tokura so that Raymond could immediately pay Tokura the amounts due.

Although Raymond paid Tokura the sum of $3,556,225.16 under the arbitration award, Tokura filed this action on June 25, 1981 to seek the Court's confirmation of the award and an additional amount of $263,-384.19, which Tokura claims is still owed

under the award. Raymond contends that it has made full payment to Tokura and offers various objections to the arbitrator's award as defenses in this confirmation suit.

## II. Scope of Review

■ In a proceeding to confirm an arbitration award, the court's review of the award is limited by both case law and the language of the Federal Arbitration Act.

Over 70 years before the first federal legislation on arbitration was enacted, the Supreme Court noted that, if the award is within the submission and contains the honest decision of the arbitrators rendered after a full and fair hearing of the parties, it must be confirmed regardless of error in either law or fact. *Burchell v. Marsh*, 58 U.S. 344, 15 L.Ed. 96 (1854). The Court explained that this standard of limited judicial review was required so as to give full credence to the judges contractually chosen by the parties and to avoid having an arbitration award mark the commencement rather than the end of litigation. *Id. See generally Vacation of Arbitration Award*, 20 A.L.R.Fed. 295, 311–16 (1974 & Supp. 1981).

The Supreme Court has since maintained this view of the judiciary's limited role in reviewing commercial arbitration awards by noting that, for example, arbitrators' awards may be made without an explanation of their reasons, no record of arbitration proceedings is required, whether the arbitrators misconstrued a contract is not open to judicial review, and arbitrators are not bound to the rules of evidence. *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *Bernhardt v. Polygraphic Company of America*, 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956); *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953).

The express language of the Federal Arbitration Act also restricts judicial review of an arbitration award. Section 10 limits the courts' power to vacate an award to situations involving only fraud in the procurement, corruption, misconduct, or when the arbitrators have clearly exceeded their powers. 9 U.S.C. § 10. Section 11 of the Act allows courts more flexibility if a party seeks only to modify or correct an award and authorizes judicial intervention in the terms of the award if there was an evident material miscalculation of figures, if the arbitrators made an award on a matter not submitted to them, or if the award is imperfect in form only. 9 U.S.C. § 11.

Finally, section 12 of the Act requires a party to serve on the adverse party its notice of a motion to vacate, modify, or correct an award within three months after the award has been filed or delivered.

## III. Defendant's Objections to Confirmation of Award

Raymond makes three general exceptions to the arbitration award. First, Raymond claims that two items covered in the arbitration award were not formally submitted to the arbitrators and that Tokura is therefore not entitled to recover these amounts. Raymond also contends that Tokura's application ignores the amount that Raymond has already paid for mobilization of the second dredge and that Raymond had overpaid an amount for northside dredging. Finally, Raymond argues that Tokura's application does not take into consideration an amount contractually owed by Tokura to Raymond that was not subject to arbitration.

Before addressing the specifics of these objections, however, the Court must first determine whether Raymond's claims are barred by the three-month limitation in section 12 of the Act. Tokura contends that because Raymond did not file a motion to modify or correct the award within the three months following entry of the award on February 4, 1981, it cannot now raise these objections as defenses to a confirmation suit. Raymond argues, however, that section 12 could time bar only an independent motion to modify or correct the award, not objections to an application for confirmation. Raymond alternatively claims that the award of February 4, 1981 was not made final until June 3, 1981.

■ The latter argument may be disposed of quickly. The award, which was signed and dated on February 4, 1981, recited that it was made in full settlement of all claims submitted and asserted by Tokura and three claims submitted by Raymond. The award does not state its terms were conditioned on some future resolution of Raymond's remaining claims; rather, it speaks in terms of immediacy and prompt performance. The arbitrators also communicated the finality of this award through more direct means: the American Arbitration Association both closed its file on the original arbitration (No. 71–10–0198–79) and assigned a new number (No. 71–10–0038–81) to Raymond's new claim, which was subsequently withdrawn; and indicated in their April 17, 1981 letter that they considered the February 4, 1981 award "final as rendered." Raymond's claim that this award was not final until June 3, 1981, therefore, lacks merit and is rejected by the Court.

■ Raymond argues that even if the award were final on February 4, 1981, section 12 does not operate to time bar objections to an arbitration award if they are raised when the opposing party moves to confirm the award. Raymond cites three federal district court opinions that support this position: *Chauffeurs, Teamsters, Warehousemen and Helpers, Local Union No. 364 v. Ruan Transport Corporation*, 473 F.Supp. 298 (N.D.Ind.1979); *Paul Allison, Inc. v. Minikin Storage of Omaha, Inc.*, 452 F.Supp. 573 (D.Neb.1978); *Riko Enterprises, Inc. v. Seattle Supersonics Corporation*, 357 F.Supp. 521 (S.D.N.Y.1973).

As Judge Sharp noted in *Ruan Transport*, however, the decisions in both *Paul Allison* and *Riko Enterprises* were grounded on erroneous interpretations of *The Hartbridge*, 57 F.2d 672 (2d Cir. 1932), *cert. denied sub nom. Munsom Steamship Line v. North of England Steamship Co.*, 288 U.S. 601, 53 S.Ct. 320, 77 L.Ed. 977 (1933). This Court agrees with Judge Sharp's insightful analysis of the lack of underlying authority behind the two earlier cases, 473 F.Supp. at 300, and therefore rejects Raymond's re-

liance on the *Paul Allison* and *Riko Enterprises* opinions.

Judge Sharp's decision in *Ruan Transport*, however, reached the conclusion that the ultimate rulings in the earlier cases were correct because, he reasoned, the legislative history of the Arbitration Act dictated the same result. *Id.* at 301. *Ruan Transport*'s review of the legislative history did not reveal a specific Congressional intent to preclude the applicability of section 12 when objections are raised in an action to confirm an arbitration award. Rather, the court observed that the federal law was modeled after a similar New York law and a New York court has interpreted that legislation so as not to preclude defenses to a motion to confirm even though the defenses were not filed within the three-month limitation period. *Id.* at 302–03 (citing *In re Picker*, 130 A.D. 88, 114 N.Y.S. 289 (1909)). *Ruan Transport* thus concluded that because Congress did not disapprove this interpretation in either the statutory language or during Congressional debate, Congress must have intended that the federal legislation be interpreted as the identically worded New York legislation had been interpreted. *Id.* Judge Sharp therefore held in *Ruan Transport* that section 12 limits only the time in which a party may file an independent motion for an order to vacate, modify, or correct an award. *Id.* at 303.

Tokura contends that the analysis in *Ruan Transport* relies too heavily on conjecture, speculation, and the meaning to be inferred from Congressional silence on the issue of whether it approved a court's interpretation of the New York statute rendered some sixteen years before Congress passed the Act.

In addition to criticizing *Ruan Transport*, Tokura cites a recent Seventh Circuit opinion that considered whether the Arbitration Act would preclude objections to a confirmation suit that were not filed within the three-month time period. In *Chauffeurs, Teamsters, Warehousemen and Helpers, Local Union 135 v. Jefferson Trucking Company*, 628 F.2d 1023 (7th Cir. 1980), the

court determined that section 12 would preclude a defendant from prosecuting its objections to an award, even as defenses to a confirmation suit, if the objections were not filed within the three-month period. *Id.* at 1026. The Seventh Circuit concluded, based on a literal reading of the act, that section 9 instructs that a court "must grant" an application for confirmation unless the award is challenged within a three-month period following its issuance. *Id.*

Although the *Jefferson Trucking* court did not discuss either the *Ruan Transport* decision or the legislative history of the Act, this Court finds *Jefferson Trucking*'s reasoning more convincing than that offered by Judge Sharp in *Ruan Transport.* The fact that *Jefferson Trucking* was ultimately decided under the Labor Management Relations Act of 1947, 29 U.S.C. § 185(e), does not detract from its persuasiveness on this issue.

The Court therefore holds that section 12's three-month limitation period precludes Raymond's assertions of objections to the arbitration award because the award was final when made on February 4, 1981 and Raymond did not file its objections until July 27, 1981, over five months later. *Cf. United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981); *Local 1020 of the United Brotherhood of Carpenters and Joiners of America v. FMC Corporation,* 658 F.2d 1285 (9th Cir. 1981).

■ Assuming arguendo that section 12 of the Act does not prevent Raymond from asserting its claims in Tokura's suit to confirm the arbitration award, however, the Court finds that these claims lack validity.

Raymond claims that two items covered by the award—Bid Item 177 and escalation amounts—should not be confirmed because the issue of liability for these items was not formally submitted to the arbitrators in Tokura's statement of claims. The Court does not accept this argument for two reasons.

First, arbitration proceedings are not held to the same technical rules of pleading and evidence as lawsuits in federal courts. *See,*

*e.g., Swift Industries, Inc. v. Botany Industries, Inc.,* 466 F.2d 1125, 1129 n.10 (3d Cir. 1972); *American Almond Prod. Co. v. Consolidated Pecan S. Co.,* 144 F.2d 448 (2d Cir. 1944). *Cf.* Rule 54(c), Federal Rules of Civil Procedure ("every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in [its] pleadings").

Second, as excerpts from the arbitration transcripts reveal, evidence on these contested items was presented to and discussed with the arbitrators by witnesses for both parties. *See* Arbitration Hearings, Vol. XXI, pp. 3463–65; Vol. IX, pp. 1442–45; Vol. XXIII, pp. 3655–59 (as excerpted in Plaintiff's reply to response of Corporacion Raymond, S.A. to application of Tokura Construction Co., Ltd. to confirm award and to objections of Corporacion Raymond, S.A. to confirmation of award).

Because the arbitrators included awards for Bid Item 177 and escalation amounts in their decision, they apparently concluded that sufficient evidence was presented on these issues to support their decision that Raymond was liable to Tokura for these amounts.

Two of Raymond's other claims, that the award amount should be reduced because it had already paid $142,000 for mobilization of the second dredge and it had overpaid Tokura for northside dredging in the amount of $68,362, are also without merit because the arbitrators were aware of these contentions. Tokura's Modified Statement of Claims filed with the arbitrators on June 2, 1980 reflected that the total amount claimed for mobilization of the second dredge was $300,000 and that $158,000 was still due. After hearing evidence, the arbitrator's award directed in paragraph four that Raymond pay "an additional amount of $165,100." Similarly, paragraph seven of the award reflects that the arbitrators considered their award to be in full settlement of Raymond's claim for a refund of the amount it paid to Tokura for northside dredging in excess of the contract amount. Because the arbitrators were aware that

these amounts had been paid, their failure to require an offset in the award indicates that they consciously chose not to do so after hearing the evidence.

■ Finally, Raymond seeks to offset the award amount by $52,938.47 because this amount was allegedly owed by Tokura to Raymond as "backcharges." Tokura initially asserted a claim for nonpayment of this amount in its counterclaim to Raymond's new claim that was pending before the arbitrators after the February 4, 1981 award. This dispute, however, was not ruled on by the arbitrators because, Tokura alleges, Raymond refused to pay its portion of the arbitrators' expenses. Because the Court's role is to rule on the arbitration award itself, Raymond's assertion of a claim that was disputed but never ruled on by the arbitrators is improper and therefore rejected. Raymond's remedy is to seek its own award for the backcharge amounts in a separate hearing.

The Court therefore concludes that Raymond's claims in opposition to Tokura's application for confirmation of the award are time-barred by section 12 of the Federal Arbitration Act. The Court further observes that even were the claims not time-barred, they lack merit and therefore would not be sufficient to modify the arbitrators' February 4, 1981 award. The Court therefore GRANTS Tokura's motion to confirm the arbitration award, ORDERS that Tokura is entitled to recover from Raymond the sum of $263,384.18 plus interest at the rate of nine percent (9%) per annum from February 4, 1981, and ORDERS that Raymond promptly comply with remaining terms of the arbitration award.