**FLORASYNTH, INC., Plaintiff-Appellee,**

v.

**Alfred PICKHOLZ,**
**Defendant-Appellant.**

**No. 120, Docket 84-7333.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 17, 1984.

Decided Dec. 6, 1984.

Francis Carling, New York City (Francis Carling, Leo T. Crowley, Winthrop, Stimson, Putnam & Roberts, New York City, of counsel), for defendant-appellant.

Lloyd I. Isler, New York City, for plaintiff-appellee.

Before VAN GRAAFEILAND and CARDAMONE, Circuit Judges and MacMAHON, District Judge.*

CARDAMONE, Circuit Judge:

On this appeal we consider whether a party aggrieved by an award at the conclusion of an arbitration proceeding must raise his defenses to it within the period prescribed, or whether he may sit that time out and make his motion to vacate as a defense to his opponent's motion to confirm. The United States District Court, 598 F.Supp. 17, for the Southern District of New York (Edelstein, J.) held that the Federal Arbitration Act's three month statute of limitations for motions to vacate, 9 U.S.C. § 12 (1982), barred appellant Alfred Pickholz' attempt to interpose such a motion as a defense to a motion made by appellee, Florasynth, Inc., to confirm its favorable arbitration award. Fully recognizing that New York permits such a defensive motion after the time for making it has elapsed and that a contrary view will create "one rule for Athens and another rule for Rome," we nonetheless affirm. When a losing party has important defenses to an arbitration award he should raise them promptly instead of later attempting to oppose what should be a routine confirmation motion.

## I

Pickholz was a Vice-President of Florasynth pursuant to an employment contract dated November 2, 1979. On December 1, 1981 Florasynth gave him six months notice of termination under the "no cause" termination provision of the contract. A dispute arose about whether, according to the contract, Florasynth owed Pickholz certain commissions. The employment contract provided for arbitration of disputes before a tripartite arbitration panel. Pickholz demanded arbitration and chose his arbitrator. Florasynth agreed to arbitrate

---

* Honorable Lloyd F. MacMahon, United States District Judge for the Southern District of New York, sitting by designation.

and chose its arbitrator. These two selected a third person as the neutral arbitrator.

Following Pickholz' presentation of his claim to the panel, but prior to any determination on its merits, Florasynth challenged the qualifications of the arbitrator chosen by Pickholz. The other two arbitrators investigated the challenges to that arbitrator's qualifications and decided that any determination on such issue would be time-consuming, extraneous to the merits of the claim before them, and probably beyond their powers. Accordingly, they wrote a letter dated September 8, 1982 stating that they had "a duty to resign and dissolve the panel" so that the parties would be free to conduct another proceeding *de novo*, with a new panel that would not be concerned with this question. Pickholz' attorney then initiated a *de novo* proceeding by naming a different arbitrator. Florasynth did the same and the two chose a third arbitrator. The second panel found in Florasynth's favor two to one—with Pickholz' choice dissenting—and rendered its award on April 14, 1983. Four months later on August 9, 1983 Florasynth successfully moved to confirm the award.

Appellant now claims that he is not bound by this final arbitration award for several reasons. He argues that only a court may entertain challenges to the qualifications of an arbitrator, and that the court may hear those challenges only upon its review of the challenged panel's final award. In effect, appellant argues that the first panel of arbitrators had no right to resign, and it was their duty to decide the dispute before them. Appellant further contends that because two members of the original panel of arbitrators improperly resigned and dissolved the panel, the second panel never had jurisdiction to resolve the contract dispute, and for that reason its award must be vacated.

Pickholz remained silent for four months after the panel of arbitrators found against him. He made no attempt to correct what he apparently believed was an injustice by moving to vacate the final arbitration award within the three month time period allotted for such a motion under the Federal Arbitration Act, 9 U.S.C. § 12. Not until Florasynth moved to confirm the award did appellant object. We agree with the district court judge that this was too late.

## II

As a threshold matter we address appellant's contention that the members of the first panel of arbitrators had no right to resign and, therefore, the second panel never obtained jurisdiction and could not legally render an award. Although the panel in question was made up of two arbitrators appointed by the parties and one "neutral" arbitrator, there is no question that all three members of the panel have a responsibility to be disinterested. Section 5 of the Federal Arbitration Act provides that when an arbitration panel comprises two partisan arbitrators who select a third, neutral umpire, the three persons appointed must act as a board of arbitrators. 9 U.S.C. § 5. The language of the arbitration clause sued upon shows that such was the intent in this case. That clause stated that Pickholz or the Company could demand arbitration and "shall each select one (1) arbitrator.... The said arbitrators so selected shall ... name a third arbitrator, and together the three (3) persons so named shall constitute the arbitrators to make the determination." Here, two were not to act merely as partisan advocates directing argument to a third who would act as umpire. The inference from the clause is quite the contrary; the three arbitrators were intended to serve and act as one board.

A party may vacate an arbitration award when "there was evident partiality or corruption in the arbitrators, or either of them." 9 U.S.C. § 10(b). "Evident partiality" means more than a mere appearance of bias. *See International Produce v. A/S Rosshavet*, 638 F.2d 548, 552 (2d Cir.), *cert. denied*, 451 U.S. 1017, 101 S.Ct. 3006, 69 L.Ed.2d 389 (1981). As arbitrators are usually knowledgeable individuals in a given field, often they have interests and relationships that overlap with the matter they are considering as arbitrators. The mere

appearance of bias that might disqualify a judge will not disqualify an arbitrator. *See id.; but see Morelite Construction Corp. v. Carpenters Benefit Funds*, 748 F.2d 79 (2d Cir.1984) (father-son relationship between an arbitrator and an officer of one party to the arbitration constitutes "evident partiality").

■ Nonetheless, an arbitrator must disqualify himself when he believes he is partial. There are certainly circumstances under which, although a party could not successfully mount a charge of evident partiality against an arbitrator the arbitrator may wish to resign. That decision is better left to the discretion of the individual arbitrator. *Cf. Wolfson v. Palmieri*, 396 F.2d 121, 125 (2d Cir.1968). Because arbitrators act in a quasi-judicial capacity, they, like judges, have an unqualified right to recuse themselves from any matter that they, in their sole discretion, believe might cause their impartiality to be questioned. If, as is the case here, the arbitrators believed that their resignation under the circumstances would best serve the interests of the parties, it was both their right and their responsibility to resign. *Id.*

■ At oral argument appellant disclosed that he would ultimately request a remand of this dispute to the first panel of arbitrators. In effect, appellant would seek an order directing the two resigning arbitrators to hear a case from which they had recused themselves. The Arbitration Act does not provide for judicial scrutiny of an arbitrator's qualifications to serve, other than in a proceeding to confirm or vacate an award, which necessarily occurs after the arbitrator has rendered his service. There is, therefore, no basis, statutory or otherwise, for a court to review an arbitrator's earlier resignation, and we know of no authority that grants courts the power to force unwilling arbitrators to serve. We conclude that the resignation of the first panel of arbitrators was not improper and that the second panel obtained jurisdiction over the matter.

### III

Turning to the statute of limitations issue, appellant cites our decision in *The Hartbridge*, 57 F.2d 672 (2d Cir.1932), *cert. denied sub nom.*, *Munson Steamship Line v. North England Steamship Co.*, 288 U.S. 601, 53 S.Ct. 320, 77 L.Ed. 977 (1933), as support for his argument that the statute of limitations in 9 U.S.C. § 12 does not apply to defenses that may be raised against a motion to confirm. While some courts have relied on *The Hartbridge* to support this conclusion, *see, e.g., Riko Enterprises, Inc. v. Seattle Supersonics Corp.*, 357 F.Supp. 521 (S.D.N.Y.1973); *Paul Allison, Inc. v. Minikin Storage of Omaha, Inc.*, 452 F.Supp. 573 (D.Neb. 1978); *Moran v. Paine, Webber, Jackson & Curtis*, 279 F.Supp. 573 (W.D.Pa.1966), *aff'd*, 389 F.2d 242 (3d Cir.1968), it stands for no such proposition. *The Hartbridge* is not authority for permitting a motion to vacate to be interposed upon the making of a motion to confirm when the three month period has elapsed. In that case the arbitrator rendered the award on November 6, 1931. On December 1, less than a month later, the winning party in the arbitration filed a motion to confirm. The losing party argued that the court lacked jurisdiction to entertain the motion to confirm because it had three months to move to vacate and fully intended to move within that time. The district court granted the confirmation order believing that the losing party could make its motion to vacate later.

■ On appeal, we disagreed with the district court and held that one party's motion to confirm an arbitration award imposes on the other party an obligation to move to vacate if he intends to do so. 57 F.2d at 673. Thus, *The Hartbridge* dealt with motions to confirm made within three months and not, as here, motions to vacate made after three months. In *The Hartbridge* we noted in passing New York authority that permits motions to vacate after three months, but carefully avoided committing ourselves "to the correctness of this construction of the statute." *Id.* at 673. With that specific question now be-

fore us, we hold that such a construction of the Federal Arbitration Act is incorrect and that defendant's failure to move to vacate the award within the three month time provided precludes him from later seeking that relief when a motion is made to confirm the award.

**A**

To support this conclusion we first examine the Federal Arbitration Act. Under the Arbitration Act a party wishing to confirm an arbitration award may apply to the court for a confirmation order any time within one year "and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9. Section 10 severely restricts the power of a court to vacate an award to cases involving fraud in procurement of the award, misconduct, or arbitrators clearly exceeding their powers. Section 11 grants courts more flexibility when a party seeks not to vacate, but to modify or correct an award. That section authorizes judicial intervention where there is an evident miscalculation of the figures, an award was made on a matter not submitted to the arbitrators, or the award is impermissible in form.

Section 12 of the Act provides:

Notice of a motion to vacate, modify or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered.

No exception to this three month limitations period is mentioned in the statute. Thus, under its terms, a party may not raise a motion to vacate, modify, or correct an arbitration award after the three month period has run, even when raised as a defense to a motion to confirm. *See Carpenters 46 N. Cal. Counties Conf. Bd. v. Meddles,* 535 F.Supp. 775, 778 (N.D.Cal. 1981); *but see Chauffeurs Local 364 v. Ruan Transport Corp.,* 473 F.Supp. 298, 302 (N.D.Ind.1979).

Further, there is no common law exception to the three month limitations period on the motion to vacate. *See Chauffeurs Local 364 v. Ruan Transp. Corp., supra,* 473 F.Supp. at 301. The action to enforce an arbitration award is a creature of statute and was unknown in the common law. As the Seventh Circuit noted in *Chauffeurs Local 135 v. Jefferson Trucking Co.,* 628 F.2d 1023, 1027 (7th Cir.1980),

It is settled that where by statute a right of action is given which did not exist by the common law, and the statute giving the right fixes the time period within which the right may be enforced, the time so fixed becomes a limitation on such right.

*Id.* (citation omitted).

**B**

The fact that the federal act is modeled substantially on similar New York State legislation has caused doubt about when a party must move to vacate. *See Chauffeurs Local 364 v. Ruan Transport Corp., supra,* 473 F.Supp. at 302–03. New York law permits a party to oppose a motion to confirm with a motion to vacate even after three months have passed. *Grayson-Robinson Stores v. Iris Construction Corp.,* 7 A.D.2d 367, 183 N.Y.S.2d 695, *app. den.,* 8 A.D.2d 698, 185 N.Y.S.2d 746 (1959), *aff'd,* 8 N.Y.2d 133, 202 N.Y.S.2d 303, 168 N.E.2d 377 (1960). In *The Hartbridge* we recognized that such was the rule in New York, 57 F.2d at 673, citing *Matter of Picker,* 130 A.D. 88, 114 N.Y.S. 289 (1st Dep't 1909). Although the language of New York's present statute, CPLR §§ 7510 and 7511, is very similar to 9 U.S.C. §§ 9 and 12, there is a legislative basis for the different construction New York courts have given their statute.

Congress passed the present Federal Arbitration Act in 1947, 61 Stat. 672. It aimed to continue the original act passed in 1925, 43 Stat. 885, which it had modeled after New York arbitration legislation. *See* New York Civil Practice Act §§ 1456–1459 (when amended in 1937 these became §§ 1461–1463). The section of the New York Act that covered motions to confirm arbitration awards contained language similar to the present § 9 of the federal Act:

At any time within one year after the award is made ... any party to the submission may apply to the court specified on submission ... for an order confirming the award; and thereupon the court must grant such an order unless the award is vacated, modified or corrected, as prescribed in the next two sections....

N.Y. C.P.A. § 1456 (later § 1461). Section 1459 (later § 1463) of the old New York C.P.A. dealt with the time limit for motions to vacate, modify, or correct. That section, like the present 9 U.S.C. § 12, required notice of a motion to vacate, modify or correct to be made within three months after the award was filed. In 1937 the New York legislature added an exception to the section on the timing of these motions. It stated that the three month period of limitations should apply

except that in opposition to a motion to confirm an award, any of the grounds specified in section fourteen hundred sixty-two [the grounds for vacation of an award] may be set up....

N.Y. C.P.A. § 1463. Congress did not adopt this exception when it passed the present arbitration act in 1947.

In 1962 the New York legislature enacted its current arbitration law in the Civil Practice Law and Rules, CPLR §§ 7501 *et seq.*, which it patterned closely on the earlier Civil Practice Act. When New York adopted CPLR § 7511, which contains the time limit on motions to vacate, it did not retain the language quoted above, but the legislature expressly indicated its intent to continue the practice of allowing motions to vacate in opposition to motions to confirm even after the three month time limit has expired. N.Y. CPLR § 7511, *Practice Commentaries* (McKinney 1980); Siegel, *New York Practice*, § 601 (1978); second preliminary report of the Advisory Committee on New York Practice and Procedure, Leg.Doc. No. 13 at 144 (1958) (The Advisory Committee Report notes that this section derived from CPA § 1463 and observes that as the motion to confirm and vacate or modify are interrelated they are, therefore,

integrated under the proposed provision). This historical background explains why New York courts faced with statutory language almost identical to that contained in the Federal Arbitration Act §§ 9 and 12 allow persons in appellant's position to bring a motion to vacate as a defense to a motion to confirm, even after the three month limitation period has passed.

## C

The grounds for vacation of an award are narrow. Courts may not question provisions of the award itself; rather, they may vacate only for conduct that has prejudiced the rights of the parties. The purpose of the motion to vacate is to prevent an award from being enforced when some injustice in the proceedings taints its validity. Although it is important to the fair administration of arbitration that a party have the means to vacate an unjustly procured award, there is also good reason for the Act's three month limitation on this right.

An examination of the underlying purposes of the arbitration mechanism amply demonstrates the sound policies that support our conclusion. First, the confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court. *See* M. Domke, *The Law and Practice of Commercial Arbitration* § 37.02 (1968). The award need not actually be confirmed by a court to be valid. An unconfirmed award is a contract right that may be used as the basis for a cause of action, *E.A. Bromund Co. v. Exportadora Affonso de Alburquerque*, 110 F.Supp. 502, 502–03 (S.D.N.Y.1953); 3 Fed.Proc. L.Ed. § 4:93. In fact, in the majority of cases the parties to an arbitration do not obtain court confirmation. A party, successful in arbitration, seeks confirmation by a court generally because he fears the losing party will not abide by the award. Armed with a court order the winning party has a variety of remedies available to enforce the judgment.

Second, parties choose to arbitrate because they want quick and final resolution of their disputes. The role of arbitration as a mechanism for speedy dispute resolution disfavors delayed challenges to the validity of an award. *See Service Employees Int'l Union Local No. 36 v. Office Center Services,* 670 F.2d 404, 412 (3d Cir. 1982). Thus, when a party to an arbitration believes that he has been prejudiced in the proceedings by behavior that the Act condemns he must bring a motion to vacate within the allotted time. When the three month limitations period has run without vacation of the arbitration award, the successful party has a right to assume the award is valid and untainted, and to obtain its confirmation in a summary proceeding.

It is for these reasons that we hold, as have other circuits, that a party may not move to vacate after three months from the time the arbitration panel issued its award. *See Sheet Metal Workers' Int'l Ass'n Local 252 v. Standard Sheet Metal,* 699 F.2d 481 (9th Cir.1983); *Service Employees Int'l Union v. Office Center Service; Chauffeurs Local 135 v. Jefferson Trucking Co.*

The judgment is accordingly affirmed.