**PENNSYLVANIA ENGINEERING CORP. and Pennsylvania Energy Resources Company, Ltd., Plaintiffs,**

v.

**ISLIP RESOURCE RECOVERY AGENCY, et al., Defendants.**

No. CV 88–2733.

United States District Court, E.D. New York.

April 12, 1989.

Rosen & Reade by Michael J. Schlesinger, New York City, for plaintiffs.

Zavin, Sinnreich & Wasserman by Jonathan Sinnreich, New York City, for defendants.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

The present construction-contract action arises out of an agreement awarding Pennsylvania Energy Resources Company, Ltd. ("PERC") the right to construct and operate a solid waste disposal facility in Islip, New York. In their complaint plaintiffs assert four causes of action. In response, defendants allege nine counterclaims against plaintiffs and Victor Posner, a counterclaim defendant. Jurisdiction is retained through diversity of citizenship. 28 U.S.C. § 1332. Defendants move for summary judgment on plaintiffs' case in its entirety and on their first three counterclaims. Fed.R.Civ.P. 56.

## UNDISPUTED FACTS

In 1985, the Islip Resource Recovery Agency (the "Agency") entered into an agreement (the "Agreement") with plaintiff-Pennsylvania Energy Resources Company, Ltd. ("PERC") for the construction and operation of a mass burn waste disposal facility (the "Facility") in Islip, New York. The Agreement required PERC, inter alia, to complete the construction of the Facility by March 31, 1988, the "Scheduled Performance Achievement Date." Pennsylvania Engineering Corporation ("PEC"), the corporate parent and sole stockholder of PERC, is the obligor on a guarantee for the faithful performance of PERC's contractual obligations to the Agency.

In early 1986 PERC began construction of the Facility. Throughout 1987 PERC experienced financial problems which caused delays in the construction schedule. See Hixenbaugh Affidavit at ¶¶ 30–37; Cahill Affidavit dated October 1, 1988 at ¶¶ 30–31.

On March 30, 1988 PERC requested from the Agency (1) a 5½ month extension of the performance achievement date due to engineering, procurement and construction delays; and (2) an increase in the construction price due to alleged changes in the design of the Facility. The Agency rejected these claims. See Hixenbaugh Affidavit at ¶¶ 74, 78, Ex. O.

By letter dated May 3, 1988 the Agency informed PERC that a "dispute exists within the meaning of Article 15 of the Agreement regarding the following issues:

(1) Whether PERC is entitled to an extension of the Performance Achievement Date.

(2) Whether PERC is entitled to an increase in the Construction Price due to alleged changes and/or extended overhead costs.

(3) Whether PERC is in default of its obligations under the Agreement."

Hixenbaugh Affidavit at ¶ 78, Ex. O.

Article A–15.2 of the Agreement provides that a dispute will be resolved by an Independent Construction Engineer (the "Arbitrator"). Pursuant to the Agreement, the Arbitrator assumes "conclusive jurisdiction over the dispute and will be required to make a *final binding determination* (*not subject to appeal*) within twenty (20) days of submission of the dispute statements ..." See Article A–15.2 of the Agreement (emphasis added).

In the May 3, 1988 letter, the Agency mentioned a previously provided list of engineering firms and asked PERC to select one to be the Independent Construction Engineer. PERC selected Roger S. Hechlinger, an engineer employed by Roy F. Weston Company ("Weston") as the Arbitrator.

Both parties submitted to the Arbitrator relevant documents and evidence. On June 23, 1988 the Arbitrator decided *inter alia:*

(A) PERC is not entitled to an extension of the Scheduled Performance Achievement Date.

(B) PERC is not entitled to an increase in the Construction Price.

(C) PERC is in default under the Agreement and liable for Delay damages from the date the default occurred.

*See* Arbitrator's Decision, dated June 24, 1987. Relying on the this award, the Agency terminated PERC on June 29, 1988.

## PLAINTIFF'S CLAIMS AND ALLEGATIONS

Upon reviewing the papers, it appears that plaintiffs contend that the arbitration award is non-binding because the Independent Construction Engineer was biased. Normally, in a case involving an arbitrator's decision, the party disputing the preclusive effect of the arbitration will move immediately to vacate the award. *See* 9 U.S.C. § 10. Nevertheless, plaintiffs have not so moved. Instead plaintiffs assert four causes of action against the defendants. For the first cause of action, plaintiffs accuse the defendants of bad faith in willfully breaching the Agreement. In the second cause of action, plaintiffs contend that defendants tortiously interfered with contractual and pre-contractual relations. In their third claim, plaintiffs assert that defendants fraudulently induced PERC into continuing to contribute its original equity and an additional $2,400,000 in the project. Finally, plaintiffs allege a claim for quantum meruit.

The defendants filed an amended answer which contains nine counterclaims:

1. The First Counterclaim is against PERC for breach of contract.

2. The Second Counterclaim is against PERC to confirm the independent construction engineer's decision under the Federal Arbitration Act.

3. The Third Counterclaim is against PEC on its guarantee of PERC's obligations.

4. The Fourth Counterclaim asserts a claim of fraud against PEC and PERC.

5. The Fifth Counterclaim is against PEC and PERC for fraud.

6. The Sixth Counterclaim is against PEC and PERC for fraud.

7. The Seventh Counterclaim asserts a cause of action for negligent misrepresentation against PEC and PERC.

8. The Eighth Counterclaim alleges a Federal Racketeer Influenced and Corrupt Practices Act ("RICO") violation against Victor Posner and PEC.

9. The Ninth Counterclaim asserts a RICO violation against PERC.

## DISCUSSION

Defendants move for partial summary judgment. Fed.R.Civ.P. 56. Largely relying on the preclusive effect of the arbitration, defendants request confirmation of the Arbitrator's decision and dismissal of plaintiff's entire case. Moreover, defendants move for summary judgment on their first three counterclaims. Since the effect of the arbitration pervades all aspects of this lawsuit, the Court will deal with this issue first.

## I. ARBITRATION AWARD

There is considerable confusion amongst the parties regarding whether state or federal law governs the issue of confirming the arbitration. Both sides point to a choice of law clause in the Agreement, and jointly conclude that New York law governs. Thus, defendants seek to confirm the Arbitrator's decision under New York law. In response, plaintiffs object to confirmation on the grounds that the Arbitrator was biased.

In addition, by moving for summary judgment on their second counterclaim, defendants seek to confirm the award under the Federal Arbitration Act (the "Act") as well. 9 U.S.C. § 9. In response, plaintiffs argue that because the parties specified that New York law governs the Agreement, the Arbitrator's decision is not enforceable under the Federal Arbitration Act. Moreover, even if the Act applies, defendants contest confirmation because of the "evident" partiality of the arbitrator.

### a. *Jurisdiction*

The Federal Arbitration Act is something of an anomaly in the area of subject matter jurisdiction. The Act "creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate...." *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n. 32, 103

S.Ct. 927, 942 n. 32, 74 L.Ed.2d 765 (1983). However, the Act does not establish an independent basis for federal-question jurisdiction. In order for a federal district court to retain jurisdiction in an arbitration case, diversity of citizenship or some other independent basis for federal jurisdiction must be available. *See Moses H. Cone Hospital, supra.; Ballantine Books, Inc. v. Capital Distributing Co.,* 302 F.2d 17 (2d Cir.1962); *Dorn v. Dorn's Transp., Inc.,* 562 F.Supp. 822 (S.D.N.Y.1983). Here, complete diversity of citizenship exists.

b. *Authority to Confirm the Arbitration Award Under the Federal Arbitration Act*

Although jurisdiction is retained through diversity, not all arbitration awards fall within the ambit of the Act.

A contractual arbitration agreement is subject to the Federal Arbitration Act if the contract "evidenc[es] a transaction involving" interstate or maritime commerce. 9 U.S.C. § 2. The contract in this case involves a multi-million dollar construction project to be built on Long Island by a Delaware corporation which involves engineers, contractors, supplies, etc. from many states. Thus, the construction of the Facility affects interstate commerce.

Seeking to prevent confirmation under the Act, plaintiffs point out that 9 U.S.C. § 9 gives a federal court the authority to confirm an arbitration award "If the parties in their agreement have agreed that a judgment of the Court shall be entered upon the award made pursuant to the arbitration...." Plaintiffs conclude that in order to confirm an arbitration award under the Act, the contract must not only involve interstate or maritime commerce, but must state that the parties agreed to the entry of judgment by a court.

The Agreement does *not* state expressly that a 'court' shall enter judgment. Instead, the Agreement states that the Independent Construction Engineer shall make "a final, binding determination (not subject to appeal)." *See* Article A–15.2 of the Agreement.

Nevertheless, federal jurisdiction in confirming an arbitration may be implied by the parties' agreement that the decision will be final and binding. In *I/S Stavborg v. National Metal Converters, Inc.,* 500 F.2d 424 (2d Cir.1974) ("Stavborg") the Second Circuit held that consent to entry of judgment can be inferred from the parties' agreement that the arbitrator's decision will be final:

> Whatever "final" means, it at least expresses the intent of the parties that the issues joined and resolved in the arbitration may not be tried de novo in any court, state or federal. Thus, the only point left open for conjecture ... is whether the parties intended for judgment to be entered in a federal, as opposed to a state, court.

*Stavborg,* at 427 (emphasis added). The Second Circuit concluded that since the substantive law to be applied in the *Stavborg* case was federal maritime law, the arbitration award could be enforced in federal court.

Plaintiffs seek to distinguish *Stavborg* by pointing out that this case is merely a diversity suit while *Stavborg* involved the application of federal maritime law. *Stavborg,* at 427. From this distinction, plaintiffs seek to fashion a general rule that in a diversity suit solely involving interstate and not maritime commerce, a federal court does not possess the authority to confirm an arbitration under the Federal Arbitration Act.

Plaintiffs' argument is misplaced. Federal court authority in arbitration matters is not confined to maritime transactions but encompasses transactions in interstate commerce as well. *See* 9 U.S.C. § 2; *Metro Industrial Painting Corp. v. Terminal Construction Co.,* 287 F.2d 382, 384–385 (2d Cir.1961); *Rothberg v. Loeb, Rhoades & Co.,* 445 F.Supp. 1336, 1339 (S.D.N.Y. 1978). As already discussed above, this Agreement affects interstate commerce.

Moreover, plaintiffs invoked federal jurisdiction with the commencement of this diversity suit. By filing a lawsuit which obviously involved the validity of an arbi-

tration award, plaintiff has consented to the entry of judgment on the arbitration by a federal district court. Plaintiffs cannot now limit the federal jurisdictional powers of this Court. *See Stavborg*, at 427.

■ Finally, plaintiffs point to the New York choice of law clause in the Agreement. They conclude that *New York law* governs the issue of confirmation and, therefore, the Arbitrator's award is enforceable, if at all, under state law and not pursuant to the federal Act.

Nevertheless, federal and not state law governs review of arbitration issues in the federal courts. The Act fashions a body of federal substantive law regulating arbitration matters. *Moses H. Cone Memorial Hospital v. Mercury Const. Corp.*, 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 942 n. 32, 74 L.Ed.2d 765 (1983). In cases involving maritime or interstate commerce, choice of law clauses are irrelevant; federal courts apply the Act's substantive standards to arbitration issues. *Graphic Scanning Corp. v. Yampol*, 850 F.2d 131, 133 (2d Cir.1988). *See also Southland Corp. v. Keating*, 465 U.S. 1, 12, 104 S.Ct. 852, 859, 79 L.Ed.2d 1 (1984); *Rothberg v. Loeb, Rhoades & Co., supra.*

Therefore, this Court retains the requisite jurisdictional authority to confirm the arbitration award under the Federal Arbitration Act.

### c. *Time Limitations*

The Federal Arbitration Act states that a party may move to confirm an arbitration award at any time within one year after the date upon which the award was rendered. 9 U.S.C. § 9. The Arbitrator issued his decision on June 24, 1988 and corrected it on July 5, 1988. Therefore, defendants' motion to confirm the award is timely.

The Act also specifies the grounds upon which an arbitrator's award may be vacated or modified, *see* 9 U.S.C. §§ 10, 11. Specifically, the statute recognizes that an award may be vacated for reasons including fraud, corruption or evident partiality

on the part of an arbitrator. *See* 9 U.S.C. § 10. Moreover, "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney *within three months* after the award is filed or delivered." 9 U.S.C. § 12.

In *Florasynth v. Pickholz*, 750 F.2d 171 (2d Cir.1984), the Court of Appeals for the Second Circuit decided the question of whether a party faced with a timely motion to confirm an arbitrator's award may counter with a motion to vacate the award, notwithstanding the expiration of the three month period in 9 U.S.C. § 12. The Second Circuit there rejected contrary New York State law precedent and held that a party cannot move to vacate an award after the expiration of the three-month period. The Court held that this remains true even if a motion to confirm is made after this three-month period has elapsed. See *Florasynth*, 750 F.2d at 174–177.

■ Although in this case plaintiffs have not formally moved to vacate the Arbitrator's award, they can only raise objections to confirmation within the statutory time limitations of a motion to vacate. *See Florasynth, supra; The Hartbridge*, 57 F.2d 672 (2d Cir.1932); *Paley Assoc. v. Universal Woolens, Inc.*, 446 F.Supp. 212, 215 (S.D.N.Y.1978). Here, plaintiffs raise objections to confirmation but after the time limit to vacate the award has already passed. 9 U.S.C. § 12.[1] Since plaintiffs are precluded from raising any objections to confirming the arbitration, the Court confirms the Independent Construction Engineer's decision.

### *Preclusive Effect of Arbitration*

#### 1. *Defendants' Second Counterclaim*

In their second counterclaim, defendants seek to confirm the arbitration award pursuant to the Federal Arbitration Act, 9 U.S.C. § 9. As already discussed, pursuant to the Act, this Court confirms the Arbitrator's decision. Therefore, defen-

---

**1.** Although neither party argued the statute of limitations issue, the Act does not provide for exceptions to the three month limitation. 9

U.S.C. § 12. Therefore, these time limitations are not waivable. *See Florasynth*, 750 F.2d at 175.

dants' motion for summary judgment on their second counterclaim is granted.

2. *Defendants' First Counterclaim*

In their first counterclaim defendants assert that PERC defaulted on the Agreement, and therefore breached the contract. Defendants move for summary judgment on this counterclaim.

■ The principle of *res judicata* bars the relitigation of any ground of recovery that was available in the prior action, whether or not it was actually litigated. Collateral estoppel precludes relitigation of issues actually litigated and necessarily determined in a prior lawsuit. *Commissioner v. Sunnen*, 333 U.S. 591, 597–598, 68 S.Ct. 715, 719–720, 92 L.Ed. 898 (1948); *Tucker v. Andersen & Co.*, 646 F.2d 721, 727–728 (2d Cir.1981); *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979). Both doctrines apply to arbitration awards. *Benjamin v. Traffic Executive Association Eastern Railroads*, 869 F.2d 107 (2d Cir.1989).

Three issues were specifically presented to the Independent Construction Engineer:

1. Whether PERC is entitled to an *extension of the Scheduled Performance Achievement Date.*

2. Whether PERC is entitled to an *increase in the construction price* due to alleged changes and/or extended overhead costs.

3. Whether PERC *is in* default of its obligation under the Agreement.

*See* Arbitrator's Decision dated June 24, 1988.

In his decision, the Arbitrator concluded that *"it is determined that PERC is in default and liable for Delay Damages."* Arbitrator's Decision at p. 24. However, due to a disagreement over the Scheduled Performance Achievement Date, the Independent Construction Engineer was unable to determine whether PERC's default occurred on March 28, 1988 or March 31, 1988. Nevertheless, for purposes of this

counterclaim, defendants concede that the Performance Achievement Date was March 31, 1988.

■ Thus, the Arbitrator specifically determined that PERC defaulted on the contract. The doctrine of *res judicata* bars plaintiff from relitigating this claim. *See Goldstein v. Doft*, 353 F.2d 484 (2d Cir. 1965) (per curiam); *Dalow Industries, Inc. v. Jordache Enterprises, Inc.*, 631 F.Supp. 774, 778 (S.D.N.Y.1985). Therefore, the Court grants defendants' motion for summary judgment on their first counterclaim.

3. *Plaintiff's First Cause of Action*

In the first count of their complaint, plaintiffs allege that defendants breached the Agreement in bad faith *by terminating PERC.*[2]

Under the rubric of this claim, plaintiffs seek to relitigate all of the claims presented to the Arbitrator. In their brief, plaintiffs state:

Issues of fact surround whether the Agency acted in bad faith by: interfering with PERC's ability to cure any default which might have existed; by seeking to hold PERC to a completion date it knew, at least as of July 1987, could not be met, while simultaneously taking PERC's contribution to equity and encouraging completion, changes and improvements to the Facility at PERC's expense (including the hiring of operating personnel); by terminating PERC two days earlier than it said it would and thereby depriving PERC of the extension period under A–6.3.

Plaintiffs' Brief dated Dec. 30, 1988 at p. 23. From these allegations, plaintiffs contend that the Agency wrongfully breached the contract by discharging PERC.

A few days after the Arbitrator's decision, the Agency terminated PERC. However, the issue of default and *not termination* was presented to the Independent Construction Engineer. Therefore, the

---

**2.** In this very same claim, plaintiffs accuse defendants of bad faith in refusing to negotiate with potential purchasers of PERC's contractual obligations. This aspect of count one merely paraphrases all of count two of the complaint. Therefore, the Court will handle this issue in deciding defendants' motion for summary judgment on plaintiffs' second claim.

doctrine of collateral estoppel and not res judicata applies to this set of operative facts. *See Balderman v. United States Veterans Administration,* 870 F.2d 57, 62 (2d Cir.1989); *Dalow Industries, supra.*

"Collateral estoppel, or issue preclusion, prevents the relitigation of an issue that was raised, litigated and actually decided by a judgment in a prior proceeding, regardless of whether the two suits are based on the same cause of action." *Balderman,* at 62 (citations omitted).

■ The very same factual issues argued before the Arbitrator are now raised in plaintiffs' first cause of action. The Arbitrator rejected plaintiffs' excuses and complaints against the Agency and concluded that PERC was in default on the Agreement. *See Arbitrator's Decision* at p. 24. Relying on the Arbitrator's decision, the Agency terminated PERC. Now plaintiffs reassert these very same allegations under the rubric of a wrongful breach of contract claim. However, the doctrine of collateral estoppel bars plaintiffs from raising the factual issues presented to the Arbitrator. *See Balderman, supra; Benjamin v. Traffic Executive, supra.*

Article A–12 of the Agreement governs all issues of termination between PERC and the Agency and states that the Agency may terminate PERC upon "an Event of Default."

Since the Arbitrator determined that PERC was in default and collateral estoppel precludes plaintiffs from relitigating the facts surrounding the default issue, defendants were within their contractual rights to terminate PERC. Accordingly, the Court grants defendants' motion for summary judgment on plaintiffs' first cause of action.

### 4. *Plaintiffs' Third Cause of Action*

In their third cause of action, plaintiffs accuse the defendants of *fraudulently inducing* "PERC into continuing to contribute its portion of the equity and contributing approximately $2,400,000 in unrequired changes and improvements, ..." *See* Plaintiffs' Complaint at ¶ 121.

■ In his decision, the Arbitrator held that PERC is *not* entitled to an increase in the construction price due to alleged changes and/or extended overhead costs. *See* Arbitrator's Decision at pp. 9, 11, 12, 16, 18, 20, 21, 22. As previously discussed, res judicata prevents relitigation of any claim that was available in the prior action, "whether or not it was actually litigated or determined." *Balderman v. United States Veterans Administration,* 870 F.2d 57, 62. Moreover, res judicata bars relitigation of the same claim even when based on a different legal theory. *Id.*

Plaintiffs cannot subvert the Arbitrator's decision by reframing the very same issue. The difference between plaintiffs' fraudulent inducement cause of action and the claims presented to the Arbitrator is one of mere semantics. *See Goldstein v. Doft, supra.* Moreover, PERC cannot be permitted to relitigate its entitlement to these same costs under a "new" fraud theory which it should have known about but chose not to present to the Arbitrator. *See Balderman, supra.*

Accordingly, the doctrine of res judicata precludes plaintiffs from relitigating this cause of action.

## II. SUMMARY JUDGMENT MOTION ON PLAINTIFFS' SECOND AND FOURTH CLAIMS AND ON DEFENDANTS' THIRD COUNTERCLAIM

The preclusive effect of the arbitration award extends only to defendants' first and second counterclaims and to plaintiffs' first and third causes of action. On separate grounds, defendants move for summary judgment on the remainder of plaintiffs' case and on their third counterclaim.

A court may grant summary judgment only if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *American Manufacturers Mutual Insurance Co. v. American Broadcasting–Paramount Theatres, Inc.,* 388 F.2d 272, 278–279 (2d Cir.1967). On a motion for summary judgment, "inferences

to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). In light of these standards, the Court now turns to defendants' motions.

1. *Plaintiffs' Second Cause of Action*

In their second cause of action, plaintiffs assert a claim for tortious interference with *both* contractual and pre-contractual relations.

Throughout February and March, 1988, PERC sought outside third parties to buy out their interest in the Facility. These negotiations centered largely around bringing Westinghouse Corp. ("Westinghouse") and/or Catalyst Work-to-Energy Resources, Inc. ("Catalyst") into assuming PERC's contractual responsibilities. *See* Plaintiffs' Rule 3(g) Statement at ¶ 90.

These negotiations did not succeed. Plaintiffs allege that the Agency interfered in bad faith with its negotiations with these two corporations and other companies as well.

For example, in the Westinghouse negotiations plaintiffs allege the following:

On March 23, 1988 when the PERC and Westinghouse representatives entered the room for the meeting, we were shocked to see representatives of Ambac, surety for the bondholders, bond counsel and representatives of Aetna, surety of the performance bond, in the room. Dorrycott (a Westinghouse representative) said that Westinghouse was in the waste management business, was very interested in taking over the facility and would make a formal proposal. Giedraitis (an Agency representative) immediately stated that PERC was going to be in default under the Service Agreement and that it could not meet its March bills. Weidner (an Agency representative) said that PERC had "screwed-up" the project and whatever PERC did on the project was a "mess". Giedraitis also stated that *the Agency "would do anything to get PERC off the job"* and that *"no company run by Victor Posner" would operate the Facility.*

*See* Hixenbaugh Affidavit at ¶ 72 (emphasis in original). Similar statements and acts are alleged against the Agency during the negotiations with Catalyst.

a. *Interference with Contractual Relations*

In a claim for tortious interference with contractual relations, plaintiffs must allege and prove (1) the existence of a valid, binding contract; (2) defendants' knowledge of that contract; (3) defendants' intentional procuring of breach of the contract; and (4) damages. *Israel v. Wood Dolson Co.*, 1 N.Y.2d 116, 120, 151 N.Y. S.2d 1, 5, 134 N.E.2d 97, 99 (1956).

Plaintiffs concede that they never entered into a binding contract with any of the third parties. Complaint at ¶ 65. Therefore, plaintiffs' claim of interference with an existing contract fails.

b. *Interference with a Prospective Contractual Relationship*

The standard for proving interference with a *prospective* contractual relationship is more stringent than the requirements for showing intentional interference with an existing contract. *PPX Enterprises v. Audio Fidelity Enterprises*, 818 F.2d 266 (2d Cir.1987); *Martin Ice Cream Co. v. Chipwich, Inc.*, 554 F.Supp. 933, 945 (S.D. N.Y.1983); *Robbins v. Ogden Corp.*, 490 F.Supp. 801, 811 (S.D.N.Y.1980).

To establish the elements of a claim that the Agency wrongfully interfered with PERC's prospective contractual relations, plaintiffs must show "the defendants' [interfered] with business relations existing between the plaintiff and a third party, *either* with the sole purpose of harming the plaintiff *or* by means that are dishonest, unfair or in any other way improper." *PPX Enterprises*, 818 F.2d at 269 (quoting *Robbins v. Ogden*, 490 F.Supp. at 811).

Plaintiffs' allegations fail to meet these stringent standards. First, the Agency was under no contractual duty to relieve PERC of its obligation under the Agreement. More importantly, plaintiffs' factual allegations amount to nothing more than

the Agency complaining, in the presence of third parties, about PERC's conduct in building the Facility.

Such allegations do not amount to "improper means." That the Agency complained about PERC is hardly surprising. The whole purpose of bringing in third parties to assume PERC's responsibilities was due to PERC's lateness in completing the Facility and the Agency's dissatisfaction with PERC's work.

Therefore, plaintiffs have failed to establish sufficient grounds which would establish a claim for interference with prospective contractual relations. Accordingly, the Court grants defendants' summary judgment motion to dismiss plaintiffs' second cause of action.

2. *Plaintiffs' Fourth Cause of Action*

In their fourth cause of action, both PEC and PERC assert solely against the Agency a claim for quantum meruit.

■■■ Where an express contract exists between the parties, there can be no recovery under a claim for quantum meruit. *Miller v. Schloss*, 218 N.Y. 400, 406–407, 113 N.E. 337 (1916); *Nixon Gear & Machine Co. v. Nixon Gear, Inc.*, 86 A.D.2d 746, 447 N.Y.S.2d 779, 781 (4th Dep't 1982). Since PERC entered into a contract with the Agency, it cannot assert a claim for quantum meruit.

However, PEC contends it can assert a quantum meruit claim for the services rendered by another of its subsidiaries, Pennsylvania Resource System, Inc. ("PRS"), which is not a party to this lawsuit. *See* Plaintiffs' Brief at p. 33.

■■■ However, a parent corporation cannot create a subsidiary and then "ignore [its] separate corporate existence whenever it would be advantageous to the parent." *Bross Utilities Service Corp. v. Aboubshait*, 618 F.Supp. 1442, 1445 (S.D.N.Y. 1985). *See also Carey v. National Oil Corp.*, 592 F.2d 673, 676 (2d Cir.1979); *In re Beck Industries, Inc.*, 479 F.2d 410, 418 (2d Cir.1973).

■■■ Courts will not allow a parent corporation to pierce the corporate veil it set up for its own benefit in order to advance the claims of its subsidiary. *See Carey*, at 676; *Bross Utilities*, at 1445. Accordingly, PEC may not assert the claims of its subsidiary PRS, and therefore, the Court grants defendants' motion for summary judgment dismissing plaintiffs' fourth cause of action.

3. *Defendants' Third Counterclaim*

Defendants move for summary judgment on their third counterclaim. This cause of action seeks a declaration that PEC is liable for its guarantee of the Agreement.

PERC is a wholly owned subsidiary of PEC. *See* Plaintiffs' Complaint at ¶ 4. In order to provide financial security for PERC's performance, PEC entered into a separate agreement with the Agency in which it "unconditionally guarantee[d] to the Agency ... the full and faithful performance of all the terms and conditions of the Agreement ... to be performed by PERC." Cahill Aff't ¶ 26, Ex. E.

Since the Agency's termination of PERC on June 29, 1988, PEC has failed to remedy PERC's defaults nor paid the Delay Damages due under the Agreement.

In their responsive papers, plaintiffs failed to brief this issue. Moreover, in their affidavits plaintiffs have not alleged any facts which contradict this claim.

■■■ In a motion for summary judgment, the sheer possibility that a factual dispute *may* exist, without more, is insufficient to overcome a convincing presentation by the moving party. *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980). Thus, the non-moving party cannot rely solely on its pleadings but must show that an issue of fact exists. *Celotex*, 106 S.Ct. at 2554. Here, plaintiffs have not produced any affidavits or documents indicating that PEC is not liable on its guarantee. Therefore, the Court grants defendants' motion for summary judgment on their third counterclaim.

CONCLUSION

The Court grants defendants' motion for summary judgment dismissing plaintiffs'

case in its entirety and on its first three counterclaims.

SO ORDERED.