**PENNSYLVANIA ENGINEERING CORP. and Pennsylvania Energy Resources Company, Ltd., Plaintiffs,**

v.

**ISLIP RESOURCE RECOVERY AGENCY, et al., Defendants.**

**No. CV 88–2733.**

United States District Court, E.D. New York.

June 12, 1989.

Rosen & Reade by Michael J. Schlesinger, New York City, for plaintiffs.

Zavin, Sinnreich & Wasserman by Jonathan Sinnreich, New York City, for defendants.

WEXLER, District Judge.

The present action arises out of a contractual dispute between Pennsylvania Energy Resources Company ("PERC"), Pennsylvania Engineering Corporation ("PEC") and the Islip Resource Recovery Agency (the "Agency"). Plaintiffs asserted four causes of action against defendants. In response defendants filed nine counterclaims against plaintiffs and Victor Posner, a counterclaim defendant.

Pursuant to Fed.R.Civ.P. 56 defendants moved for summary judgment on plaintiffs' entire case and on their first three counterclaims. By order dated April 12, 1989, 710 F.Supp. 456, the Court dismissed plaintiffs' case in its entirety and granted summary judgment on defendants' first three counterclaims. Now plaintiffs seek to negate the effect of the Court's order by moving to reargue and by seeking to amend their complaint and then moving to relate back the timing of the amended complaint to the date of the original complaint. Fed.R.Civ.P. 15(c). Before reaching the merits of plaintiffs' motions, it is necessary to describe this case's tortured history.

PERC is a wholly owned subsidiary of PEC. In 1985 PERC entered into a contractual agreement (the "Agreement") with the Agency to build a waste disposal cogeneration plant in Islip, New York. PEC agreed to guarantee PERC's performance. However, PERC experienced financial difficulties in building the plant, and the Agency became dissatisfied with PERC's performance. By letter dated May 3, 1988, the Agency informed PERC that a dispute existed within the terms of the Agreement. The Agency informed PERC that this dispute would be submitted and resolved by an "Independent Construction Engineer" (the "Arbitrator"), as described by the arbitration clause in the Agreement. Along with the letter, the Agency submitted the names of certain engineering firms, and asked PERC to pick one as the Independent Construction Engineer. PERC picked Roger S. Hechlinger of Roy F. Weston Company ("Weston") as the Arbitrator. Both sides submitted relevant documents and on

June 24, 1988, the Arbitrator decided, *inter alia:*

    (A) PERC is not entitled to an extension of the Scheduled Performance Achievement Date.

    (B) PERC is not entitled to an increase in the Construction Price.

    (C) PERC is in default under the Agreement and liable for delay damages from the date the default occurred.

*See* Arbitrator's Decision dated June 24, 1988. On June 29, 1988 the Agency terminated PERC.

On August 30, 1988 plaintiffs commenced this lawsuit. As detailed more fully in the Court's prior order, it should have been clear to plaintiffs that the preclusive effect of the Arbitrator's decision would be this case's central issue. In their complaint, which contains 312 paragraphs, plaintiffs briefly mentioned certain aspects of the Independent Construction Engineer's decision. *See* Plaintiffs' Complaint at ¶¶ 86–87. Nevertheless, plaintiffs did not indicate that the Arbitrator's determination wielded any legal significance. Moreover, plaintiffs did not move to vacate the Arbitrator's award as required by the Federal Arbitration Act, 9 U.S.C. § 10 (the "Act"). Instead plaintiffs filed this lawsuit in which they attempted to relitigate the very same issues presented to the Arbitrator, along with other claims.

On November 7, 1988, defendants filed a motion for summary judgment. Largely arguing that the doctrines of res judicata and collateral estoppel precluded plaintiffs from relitigating the issues raised before the Arbitrator, defendants sought to *confirm the Arbitrator's decision,* and moved for summary judgment on plaintiffs' entire case, and for summary judgment on their first three counterclaims. In responding briefs dated January 4, 1989 plaintiffs, for the first time, objected to the arbitration award on the grounds that the Arbitrator was biased. Although plaintiffs did not formally move to vacate the arbitration award, they submitted documents indicating that before the Agency awarded PERC the right to build the Facility, Weston had written a feasibility study which stated that PERC could build the Facility within the time limits that PERC itself proposed. PERC argued that one of the issues before the Arbitrator was its contention that it could not build the Facility on time. Moreover, PERC stated that it did not know of Weston's feasibility study, and if it had known it would never have chosen Weston as the Arbitrator.

In response to plaintiffs' argument, defendants submitted documents taken from PERC's own files which strongly indicated that PERC was fully aware of Weston's feasibility study. *See* Cahill Reply Affidavit, Ex. B.

Nevertheless, in the Court's order dated April 12, 1989 the Court disregarded plaintiffs' contention of bias by the Arbitrator. The Court stated that the Act allows a party opposing an arbitration to move to vacate the award up till three months after the rendering of the award. The first time plaintiffs raised any objections to the arbitration was in their January 4, 1989 brief in response to defendants' summary judgment motion, approximately six months after the arbitration. Accordingly, the Court concluded that the Act precluded plaintiffs from raising any objections to confirming the arbitration. Therefore, the Court confirmed the Arbitrator's award. Mainly due to the preclusive effect of the Arbitrator's decision, the Court granted defendants' motion for summary judgment dismissing plaintiffs' entire case and for summary judgment on defendants' first three counterclaims.

A few days before the Court rendered its decision, plaintiffs submitted a motion to amend their complaint. In this new complaint plaintiffs seek to add a cause of action to vacate the Arbitrator's decision on the grounds of bias. Plaintiffs presented what they termed "newly discovered evidence." Plaintiffs contend that this evidence indicates that Weston not only wrote the feasibility study but indemnified the Agency for its accuracy. Thus, plaintiffs conclude that the Arbitrator was clearly biased and his decision should be vacated.

Standing alone, the amended complaint does not negate the effect of the Court's

prior order. Plaintiffs filed this amended complaint, *which contains a motion to vacate,* far more than three months after the Arbitrator's decision, and therefore, the Act precludes plaintiffs from attempting to vacate the award. 9 U.S.C. § 12. However, plaintiffs seek to circumvent the time limitations of the Act by moving to relate back the amended complaint to the time of the filing of the original complaint. *See* Fed.R.Civ.P. 15(c). Plaintiffs argue that they filed the original complaint within the statutory three month period for a motion to vacate an arbitration. Therefore, if they can relate back the amended complaint, their motion to vacate will become timely. Moreover, in a motion to reargue, plaintiffs claim that the doctrine of equitable estoppel tolls the Act's time limitations and, therefore, the Act's time limitations should not apply.

### RULE 15(c) MOTION

■ In their 15(c) motion, plaintiffs point out that although the original complaint did not present a motion to vacate, plaintiffs filed their original complaint within the Act's three month statutory time limitation to vacate an arbitration. Thus, plaintiffs seek to circumvent the Act's time limitations by filing an amended complaint. The new complaint contains a motion to vacate the arbitration, and plaintiffs seek to relate back this complaint to the time of the filing of the original complaint. Fed.R.Civ.P. 15(c).

Thus, plaintiffs' 15(c) motion presents the following novel issue. In an arbitration case, in which a plaintiff files a complaint within the statutory time period to vacate an arbitration award, but where the complaint does not assert a motion to vacate or even raises any objections to that arbitration, can the plaintiff move to vacate after the statutory time limit has passed by filing an amended complaint, and by using Fed.R.Civ.P. 15(c) to relate back the motion to vacate to the time of the original complaint? The Court's research reveals that this admittedly convoluted question is one of *first impression.*

Rule 15(c) provides that a claim asserted in an amended pleading relates back to the date of the original pleading when the new claim "arose out of the conduct, transaction, or orcurrence set forth or attempted to be set forth in the original pleading." Fed.R.Civ.P. 15(c). *See, e.g., Encoder Communications, Inc. v. Telegen, Inc.,* 654 F.2d 198, 203 n. 2 (2d Cir.1981); *Kamerman v. Pakco Companies, Inc.,* 75 F.R. D. 673 (S.D.N.Y.1977).

No circuit has dealt with the issue presented in this motion. However, the Second Circuit's strict interpretation of the Federal Arbitration Act's time limitations on motions to vacate an arbitration award indicate that plaintiffs cannot relate back their motion to vacate to the time of their original complaint.

In *Florasynth v. Pickholz,* 750 F.2d 171 (2d Cir.1984), the Court of Appeals for the Second Circuit decided the question of whether a party faced with a timely motion to confirm an arbitrator's award may counter with a motion to vacate the award, notwithstanding the expiration of the three month period in 9 U.S.C. § 12. The Second Circuit there rejected contrary New York State law precedent and held that a party cannot move to vacate an award after the expiration of the three month period. *See Florasynth,* 750 F.2d at 174–177.

Although *Florasynth* did not deal with a Rule 15(c) relation back motion, the Second Circuit there stated that the Act recognizes *no exceptions* to the three month limitations on a motion to vacate. *Florasynth,* at 175.

The Second Circuit's *Florasynth* decision indicates that the Act does not provide for any exceptions, and therefore plaintiffs should be prohibited from relating back their motion to the time of the filing of the original complaint. Moveover, strong policy considerations indicate that the Act does not allow relation back motions. As the Second Circuit indicated in *Florasynth,* the Act strictly prohibits the filing of motions to vacate after the passing of the three month time limitation. *See Florasynth,* at 175. Allowing a party to circumvent the Act's time limitations by filing an amended complaint and then relating back the untimely motion to vacate to a period within

the Act's time limitations would severely weaken the Act's prohibitions.

Some courts, however, have applied the relation back doctrine to arbitration cases, but only in limited circumstances. For example, in *Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378 (11th Cir.1988), the party contesting the arbitration filed a *timely* motion to vacate. Later, the same party filed an amended motion to vacate by adding additional grounds. This amended motion was filed outside of the statutory three month period. The Eleventh Circuit reasoned that since the original motion to vacate was timely, the non-movant would not suffer any prejudice if the movant merely added additional grounds to the original motion. Therefore, the Eleventh Circuit allowed the movant to relate back the additional grounds to vacate the award to the time of the original motion. *See also International Chemical Workers Union v. Mobay Chemical Corp.*, 755 F.2d 1107, 1110 (4th Cir.1985).

In this case, however, plaintiffs *never* filed a timely motion to vacate. In their original complaint, plaintiffs did not contest the arbitration award at all. Therefore, now that the Act's three month time limitation has passed, plaintiffs cannot file an amended complaint with an accompanying motion to vacate.

Even if the Act did not prohibit plaintiffs' relation back motion, Rule 15(c) would not allow plaintiffs to amend their complaint. As previously stated, Rule 15(c) allows relation back of amended pleadings when the new claim arose out of the conduct, transaction, or occurrence set forth in the original pleading.

It is perhaps technically true that the motion to vacate arose out of the same set of operative facts as those set forth in the original complaint. However, in the original complaint plaintiffs *chose to ignore* the preclusive effect of the arbitration. They sought to relitigate all the issues presented to the Arbitrator as if no arbitration had occurred. It was only after defendants moved to confirm the arbitration that plaintiffs raised objections to the arbitration,

and these objections were raised outside of the Act's three month time limitation.

Since plaintiffs chose not to move to vacate within the statutory time period and instead formulated a litigation strategy designed to ignore the arbitration, this Court will not allow plaintiffs to correct their strategic errors by relating back their new motion to vacate to the time of the original complaint.

## EQUITABLE TOLLING DOCTRINE

■ Besides their Rule 15(c) motion, plaintiffs move to reargue the Court's prior order. Plaintiffs seek to avoid the Act's strict time limitations by raising the equitable tolling doctrine. They claim that since they were *unaware* of the Arbitrator's bias, the Act's time limitations do not apply. Defendants seek to show that plaintiffs were aware of any potential bias by the Arbitrator.

Whether or not plaintiffs were aware of the Arbitrator's potential conflict of interest is irrelevant. The Act's statute of limitations provisions recognize no common law exceptions. *See Florasynth*, at 175. Therefore, plaintiffs cannot use a common law exception to circumvent the Act's strict time limitations.

■ Although at this point nothing further need be said on this issue, the Court wishes to add that even if the equitable tolling doctrine did apply to the Act's time limitations, plaintiffs could not seek refuge in this common law exception. Based on two allegations, plaintiffs contend that the Arbitrator was biased. First, plaintiffs point out that before the Agency awarded the contract to build the Facility to PERC, Weston had written a feasibility study confirming that PERC could build the Facility within the time limits PERC proposed. Second, PERC submits documents which indicate that Weston entered into an indemnity agreement whereby it represented to the Agency and Kidder, Peabody & Co. Incorporated ("Kidder"), the underwriters of the Agency's revenue bonds on the Facility, that its feasibility study was accurate.

Although plaintiffs contend that the indemnity agreement is "new evidence," the feasibility study is far from a recent discovery. As documented in plaintiffs' own files, plaintiffs' management was fully aware of Weston's feasibility report. *See* Reply Affidavit of Michael Cahill dated January 17, 1989. For example, in a Letter of Representation, *dated December 18, 1985*, and addressed to Kidder, the lead underwriter, PEC and PERC stated:

> (h) PEC has reviewed the Feasibility Report of WESTON (a Business Trust) ("Weston") and (i) to the best knowledge of PEC, the assumptions and considerations set forth in such Report are reasonable and appropriate and (ii) PEC knows of no events, circumstances or facts not disclosed to WESTON which would have any adverse effect on the assumptions or conclusions stated in such Report.

*See* Reply Affidavit of Michael Cahill, Ex. B.

Therefore, the Court finds that plaintiffs' own documents indicate that at the time that PERC picked Weston to be the Arbitrator, plaintiffs were fully apprised of the fact that Weston had written a feasibility study and, therefore, could potentially be biased. Accordingly, plaintiffs' claim that the Act's time limitations should be equitably tolled because they could not discover within a three month time period Weston's possible bias is completely without merit.

## CONCLUSION

Plaintiffs motions to reargue, to amend their complaint, and to relate back their motion to vacate to the time of the original complaint are denied.

SO ORDERED.